THE PEOLPE ex rel. JETTIE DANZIGER, Respondent, *v.* THE PROTESTANT EPISCOPAL HOUSE OF MERCY of the City of New York, Appellant.

## In re Custody of MOLLIE DANZIGER.

Where, in proceedings by habeas corpus, it appears that the person is held in custody under a commitment issued by a magistrate, the only inquiry is whether the magistrate had jurisdiction of the case and authority to pronounce the judgment rendered for the cause assigned.

The decision of the magistrate may not be reviewed, and so, it is not essential to return the evidence on the trial.   (Code Civ. Pro. §§ 2032, 2034.)

If the process be valid on its face, the burden of impeaching its validity rests upon the prisoner.

Under the provision of the Code of Civil Procedure in reference to proceedings on the filing of a traverse to a return to a writ of habeas corpus (§ 2039), the return is to be assumed to be true, except in so far as its material allegations are controverted by the traverse.

The portion of such provision requiring the court or judge before whom the prisoner is brought to proceed in a summary way to hear the evidence, has no application unless the material allegations showing jurisdiction are controverted by a proper traverse.

By the return to a writ of habeas corpus, it appeared that the prisoner was held by defendant, one of the institutions named in the act of 1886 (Chap. 353, Laws of 1886), amending the Consolidation Act for the city of New York, by virtue of a commitment issued by a police justice of that city.   The commitment stated that the prisoner was a female under sixteen years of age; that she was brought before the magistrate by a policeman, who charged upon his oath that she was found in a reputed house of prostitution, and was in danger of becoming morally depraved; that she confessed and was convicted of the charge and committed to the guardianship of the institution.   *Held,* that the commitment was in substance and form sufficient to show jurisdiction of the person of the prisoner and of the subject-matter of the complaint, as given by said act..

The petitioner for the writ undertook to traverse the return by filing a verified statement in which she averred that the prisoner was her daughter, and previous to her arrest resided with petitioner; that neither the petitioner nor, as the petitioner is informed and believes, the prisoner was examined before the magistrate, nor was any evidence given to show that the house wherein the latter was found was a reputed house of prostitution, or that she was an inmate thereof and in danger of becoming morally depraved.   *Held,* that the traverse failed to controvert any of the material facts stated in the return, or to avoid them by extrinsic matter; that while it would have been competent for

the petitioner to have disputed the facts upon which the jurisdiction of the magistrate was predicated, or to have alleged extrinsic facts tending to show want of jurisdiction, in the absence of such allegations it was the duty of the judge to remand the prisoner.

(Argued June 4, 1891; decided October 6, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made February 13, 1891, which reversed an order of Special Term discharging the petitioner from custody.

The nature of the proceedings and the material facts are stated in the opinion.

*A. & C. Steckler* for relator.   The complaint was the foundation of the proceedings against the respondent, and cannot be used as evidence nor to substantiate charges made against her. The complaint must be sustained by legal evidence.   (*People* v. *Fuller*, 17 Wend. 211.)   The commitment by the magistrate and his adjudication that she was an inmate of a reputed house of prostitution, and in danger of becoming morally depraved, was not made according to the statutes nor to the laws of the state of New York.   (Code Crim. Pro. §§ 196, 197, 198, 199, 200.)   Under the Penal Code (§ 291, subd. 2), authorizing the commitment of children " not having any home or other place of abode, or proper guardianship," the guardianship contemplated is not the mere temporary supervision of a companion in the street, and the commitment is not authorized by reason of the child being found with an improper person on a single occasion, where its parents have a home with proper surroundings. (*People ex rel.* v. *N. Y. C. Protectory*, 44 Hun, 526 ; 19 Abb. [N. C] 142.)

*Elbridge T. Gerry* and *Courtland V. Anable* for defendant.

RUGER, Ch. J.   The sole question in this case is whether the defendant, a benevolent institution, had *legal authority* for detaining Mollie Danziger, a female infant over the age of twelve years, committed to its custody by a police justice of the city of New York.

The question arose upon returns made by the defendant and committing magistrate to a writ of habeas corpus and certiorari. The undisputed evidence showed that Mollie Danziger, a female infant of the age of sixteen years, was arrested on the 8th day of August, 1890 ; and was brought before Andrew J. White, a police justice of the city of New York, on the tenth day of August thereafter, and tried for the offense of being found in a reputed house of prostitution, and in danger of becoming morally depraved, and was convicted of the charge and committed to the Protestant Episcopal House of Mercy of New York, by such magistrate, to remain under the guardianship of said institution during her minority; unless sooner discharged by the trustees or managers thereof. The act under which such conviction was had, read as follows : " Whenever any female over the age of twelve years shall be brought by the police, or shall voluntarily come before a committing magistrate in the city of New York, and it shall be proved to the satisfaction of such magistrate *by the confession of such female*, or by competent testimony, that such female is found in a reputed house of prostitution or assignation, * * * and in danger of becoming morally depraved, * * * such magistrate may thereupon commit such female to the Protestant Episcopal House of Mercy of New York, * * * and said institution is authorized to receive and hold females committed under this act." It was also provided that " every commitment made under this act shall state the name and age of the female so committed, together with the cause of her commitment, and shall designate the institution to which she shall be committed, * * * and such commitment shall also state the term of the commitment, * * * provided; however, that no commitment made under the act, which shall recite the facts upon which it is based, shall be deemed or held to be invalid by reason of any defect or imperfection in form." (Chap. 353, Laws of 1886.)

Writs of habeas corpus and certiorari were duly issued and served upon the defendant, and the committing magistrate requiring them respectively to make return of the time and cause

of the imprisonment and detention of the said Mollie Danziger to a justice of the Supreme Court. The said defendant made return to such writs, that it had the said Mollie Danziger in custody by virtue and authority of the mandate of ANDREW J. WHITE, a police justice of the city of New York, a copy of which was attached to said return. This commitment was substantially in the following words: WHEREAS, Mollie Danziger, a female of the age of sixteen years, was, on the 10th day of August, 1890, duly brought before me, charged before me upon the allegation under oath of Thomas J. Crystal, that the said female, Mollie Danziger, on the 8th day of August, 1890, at the city and county aforesaid, was found in a reputed house of prostitution situated at 119 Mulberry street in said city of New York, and is in danger of becoming morally depraved. And I, having in due form of law examined said complainant and the witnesses before me produced, and also the said female, who was duly produced for my personal inspection pursuant to law, and it appearing and having been proven to me to my satisfaction, by competent testimony and evidence, *and by the confession of such female,* that she was of the age of sixteen years, and was, on the day aforesaid, found in a reputed house of prostitution at number 119 Mulberry street, in said city of New York, and was in danger of becoming morally depraved, Now, therefore, I do adjudge that the allegations set forth and stated to have been proved are true, and that it is for the welfare of said female that she be placed in a reformatory; and she is, therefore, commanded to be delivered into the custody of the said Protestant Episcopal House of Mercy, to be and remain in its custody during her minority, unless sooner discharged by the trustees or managers thereof. This commitment was signed by the said justice under his hand and seal.

The justice also made return to the writs, wherein he stated that on said 10th day of August, 1890, "I examined orally the said complainant and the witnesses before me produced in due form of law, and also the said child who was duly produced for my personal inspection, and it then and there appeared, and was conclusively proven to my satisfaction by

competent testimony and evidence, that the material allegations set forth and charged in said complaint were true, and that thereupon I did so adjudge and did commit said child by official commitment."

A copy of said complaint was also returned, whereby it appeared that Thomas J. Crystal was duly sworn on said 10th day of August, 1890, and deposed and testified that he belonged to the 6th precinct police, and that on the 8th day of August, 1890, at the city of New York, in the county of New York, one Mollie Danziger, now present, being a female actually and apparently over the age of twelve years and under the age of twenty-one years, to wit, of the age of sixteen years, was, by deponent, found in a reputed house of prostitution at No. 119 Mulberry street in said city of New York, and is in danger of becoming morally depraved. This deposition was signed by said Crystal, and purported to be sworn to before said magistrate at said trial.

The counsel for the petitioner makes several points as to the sufficiency of the return to authorize the imprisonment of the accused female, and, among other things, claims that the evidence given before the justice on the trial should have been returned, and that the language of the confession made by the prisoner should have been incorporated in the return. He also claims that the evidence of the witness Crystal was insufficient as to the reputation of the house in which he found the accused, or that she was in danger of becoming morally depraved, because the facts upon which his evidence was predicated were not returned.

The character of the argument addressed to this court seems to indicate that the counsel for the petitioner supposed that the return to a writ of habeas corpus assimilated that required by a certiorari to review, and that the evidence taken on the trial should be returned. These proceedings, however, are radically different; the one being instituted for the purpose of determining whether a person detained in custody is held by legal authority, and the other for the purpose of reviewing the determinations of subordinate tribunals in a judicial proceeding.

In habeas corpus the only inquiry is whether the magistrate issuing process had authority to pronounce a judgment of imprisonment for the cause assigned, and if this has been shown the statute forbids the judge to review the decision of such magistrate. (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 570.)

A brief reference to the powers of a judge on habeas corpus proceedings goes far to determine the merits of this controversy. The Code of Civil Procedure provides that when it appears, among other things, that the prisoner is detained in custody "by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction," and the time for which he is required to be retained has not expired, the court must remand him. (§ 2032.) Section 2034 of the same Code enacts that the court or judge is prohibited in such case, on a return to the writ, from inquiring into the legality of any mandate, judgment, decree or final order.

Referring to these requirements, it was said by Judge Allen, in the celebrated case of *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 571), to be the consensus of all the authorities that "as well at common law as under the statutes of the state, if the party is detained on process, the existence and validity of the process are the only facts in issue, and the right to inquire into the validity of the process is co-extensive with that which is allowed in an action for false imprisonment. If the process is valid on its face, it will be deemed *prima facie* legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. * * * If the judgment is merely erroneous, the court having given a wrong judgment when it had jurisdiction, the party aggrieved can only have relief by writ of error or other process of review." This court also held in *People ex rel. Van Riper* v. *New York Catholic Protectory* (106 N. Y. 604) that a summary conviction by a police magistrate, under section 291 of the Criminal Code, cannot be set aside on habeas corpus or certiorari on averments and proof that the fact proved before the magistrate on which the conviction depended were not true.

It seems clear, therefore, that the only question before the

judge on the return to this writ, was whether the magistrate executing the commitment had jurisdiction of the case and authority to pronounce the judgment rendered. An inspection of the returns. and the accompanying documents shows, we think, conclusively that the jurisdiction of the magistrate over the person of the offending female and the subject-matter of the complaint was fully demonstrated, and that the commitment was, in substance and form, sufficient and correct to show such jurisdiction and the legality of this proceeding. It was thereby shown that the accuser was a female of the age of sixteen years, and was brought before the magistrate by a policeman of the city of New York, and was there charged upon his oath with being found in a reputed house of prostitution in New York, and was in danger of becoming morally depraved ; that the female confessed the charge, and that her conviction followed. The statement in the commitment conformed strictly to the proof in the case and made a case that was brought clearly within the language and spirit. of the statute. It cannot admit of question but that the commitment was sufficient to protect the defendant from an action for false imprisonment at the suit of the prisoner, or that it required the judge on the hearing to refuse her discharge, unless some of the material facts stated in the return were traversed or avoided by the petitioner. The petitioner did undertake to traverse the returns and, in pursuance of that purpose, filed a verified statement, in which she averred : " First. That the said Mollie Danziger is your petitioner's daughter (and) by and up to the time of her arrest resided with your petitioner at No. 189 Clinton street in the city of New York. Second. Further answering upon information and belief, she alleges that (neither) the said Mollie Danziger nor your petitioner were examined. by the police magistrate, before whom the said Mollie was brought, nor was any evidence offered to show that the house No. 119 Mulberry street is. a reputed house of prostitution, or that the said Mollie was an inmate thereof and that she was in danger of becoming morally depraved." The proceedings before. a judge, on the filing of a traverse, are

regulated by section 2039 of the Code of Civil Procedure, which reads as follows : " A prisoner produced upon the return of a writ of habeas corpus may, under oath, deny any material allegation of the return or make any allegation of fact, showing either that his imprisonment or detention is unlawful or that he is entitled to his discharge. Thereupon, the court or judge must proceed, in a summary way, to hear the evidence produced in support of or against the imprisonment or detention, and to dispose of the prisoner as the justice of the case requires." The plain implication from this section is that the return is to be assumed to be true, except in so far as its material allegations are controverted by the traverse. An examination of the traverse in this case fails, we think, to show that any of the material facts stated in the return were either controverted or avoided by extrinsic matter. It is true the traverse alleges that the offending female resided with her mother up to the time of her arrest ; but this allegation, if true, does not necessarily controvert the finding of the committing magistrate that she was also found in a reputed house of prostitution and was in danger of becoming morally depraved. That she might legally have resided in one place and have been found in another for improper purposes is not only quite possible, but is probably a very frequent occurrence in the history of prostitution in large cities. Even if it could be regarded as an argumentive denial of the fact that the accused was found in a reputed house of prostitution, it would still be open to the objection that it was an effort to retry the issue already determined by the committing magistrate upon competent evidence.

The traverse also alleged that neither Mollie Danziger nor the petitioner was examined before the police magistrate. It was, of course, unnecessary that either of these parties should be examined on the trial. It was the duty of the magistrate to read the charge to the prisoner and hear her plea to the charge, and the return impliedly states that this was done and certifies that she confessed the charges made in the complaint. There is no denial of this fact and, under the statute, such con-

fession is, of itself, sufficient to sustain the judgment rendered in this case. We do not think the allegation, on information and belief, that she was not examined (obviously as a witness) is sufficient to raise an issue as to the fact of confession which she made as a party to the proceeding.

The further allegations of the traverse are to the effect that, as the petitioner is informed and believes, there was no evidence offered to show that the house, No. 119 Mulberry street, was a reputed house of prostitution, or that the said Mollie was an inmate thereof. This allegation referred simply to the proceedings on the trial and did not in any way tend to contradict the jurisdictional facts stated in the return. The facts that Crystal in his deposition stated it to be a reputed house of prostitution, and that the prisoner confessed it to be such, and that she was found therein, were each and all wholly uncontroverted. That she was in danger of becoming morally depraved followed as a necessary inference from the other facts proven. The traverse is carefully worded, and whatever impression it was intended to convey, it, in law, amounts simply to an assertion that, in the opinion of the petitioner, there was no evidence given on the trial authorizing a conviction. In the face of the distinct statement of the return that the offending female confessed the charge, and the direct evidence of the policeman making the arrest to the jurisdictional facts, we do not think this equivocal and ambiguous statement is entitled to be considered as a denial of the facts returned.

If it was intended by the petitioner, by this allegation, to bring in question the sufficiency or competency of the evidence offered in support of the conviction before the magistrate, as the argument seems to import, a writ of certiorari for review should have been obtained, which would have required a return of the evidence taken on the trial. But this course was not taken, and a review of the conviction on the merits is not permitted by this proceeding.

As it was, no evidence was offered by either party on the return of the writ, and the argument of the case proceeded before the judge without objection on either side. It was

assumed by the court and the parties that no other traverse of the return could be made, and the judge decided the application upon the papers then before him and ordered the accused to be discharged from custody. The case was treated as though a demurrer to the traverse had been interposed, or in some form as though questions of law were alone involved in the decision of the application.

We are of the opinion that the order of the judge was erroneous, and that it having been established by the conceded facts that the prisoner was held under the final judgment of a competent tribunal of criminal jurisdiction under the express provisions of the Code, she should have been remanded. The writ issued in this case did not call for a return of the evidence given on the trial, as it required the defendant therein to return only the day and cause of the imprisonment, and this requirement was sufficiently complied with by a return of a proper and sufficient warrant of commitment alone. If a warrant thus returned showed the jurisdiction of the officer making it to render the judgment described therein, it was sufficient under the requirements of the statute. It would, of course, have been competent for the petitioner in such case to have disputed the facts upon which the jurisdiction of the magistrate was predicated, or to have alleged extrinsic facts tending to show the want of jurisdiction on his part to render the judgment; but in the absence of such allegations in the traverse, it was the plain duty of the judge to remand the prisoner. Section 2039, requiring the judge to proceed in a summary way to hear the evidence, has no application, unless the material allegations of the return showing jurisdiction are controverted by a proper traverse. When that is done, the requirement is imperative and imposes upon the judge the duty of hearing the evidence of the parties in respect to the issues made.

For the reasons stated, we think the orders of the General and Special Terms should be reversed and the prisoner remanded to the custody of the defendant.

All concur.

Orders reversed.