PEOPLE ex rel. AIKINS v. SUPERINTENDENT, ETC., OF STATE INDUSTRIAL SCHOOL.

(Supreme Court, Special Term, Monroe County. December, 1900.)

REFORMATORIES—COMMITMENT—JURISDICTION—SUFFICIENCY OF WARRANT.

Code Cr. Proc. § 888, requires the parent of a child to be present at a hearing for the purpose of sending the child to an industrial school as a vagrant, or the service of such notice on the parent as the magistrate deems sufficient. Pen. Code, § 291, provides that where the warrant of commitment states that either parent was present at the hearing, or

had notice thereof, it is sufficient to authorize the industrial school to receive the child, and that when such commitment is defective a new commitment may be ordered by the magistrate. *Held*, that a vagrant child would not be released from the industrial school for the failure of the warrant of commitment to recite that notice was served on the parents of the child or that either parent was present at the hearing, on the grounds that the court had no jurisdiction to order the commitment, in the absence of a traverse of the return or a showing to the contrary, since it will be assumed that the magistrate summoned the parents to appear.

Certiorari by the people, on the relation of Roy Aikins, against the superintendent and board of managers of the state industrial school, to determine the legality of the detention of a child in the industrial school.   Dismissed.

Sidney J. Lockner, for petitioner.
George P. Decker, for respondent.

DAVY, J.   The sole question presented upon the return to the writ of certiorari granted herein is whether the relator, Roy Aikins, a boy 13 years old, is lawfully detained by the board of managers of the state industrial school at Rochester upon a warrant of commitment issued by the police justice of the city of Lockport.   Upon the presentation of a petition of the boy's grandmother, a writ of certiorari was issued, and served upon the superintendent of said institution, requiring him to make return to this court of the time and cause of the imprisonment and detention of the said Roy Aikins. The superintendent, in his return to the writ, states that the said Roy Aikins is detained in said industrial school by virtue and authority of a mandate of D. F. Stevens, a police justice of the city of Lockport, a copy of which is attached to the return.   The commitment recites that:

"The said Roy Aikins having been brought before D. F. Stevens, police justice of said city of Lockport, county of Niagara, charged with being incorrigible, a truant, and beyond the control of his parents and school teacher, and the above-named Roy Aikins having thereupon pleaded guilty, and upon such plea duly convicted, and he being proven to be of the age of thirteen years February 9, 1899, it is adjudged that he be confined in the state industrial school in the city of Rochester, New York, under the provisions of the statute relating thereto; and he is hereby committed to the custody of the board of managers of said industrial school until discharged by due course of law."

Subdivision 8 of section 887 of the Code of Criminal Procedure is the only subdivision of that section to which the charge against the boy has any relation, which provides that where any child between the age of 5 and 14, having sufficient bodily health and mental capacity to attend the public schools, is found wandering in the streets or lanes of any city or incorporated village,—a truant without any lawful occupation,—he is under that section declared a vagrant.   Section 888 provides that when complaint is made to any magistrate or peace officer against any vagrant, under subdivision 8 of the last section, such magistrate must cause a peace officer to bring such child before him for examination, and shall also cause the parent, guardian, or master of such child, if the child has any, to be summoned to attend such examination.   If thereon the com-

plaint shall be satisfactorily established, the magistrate must require the parent, guardian, or master to enter into an engagement in writing to the corporate authorities of the city or village that he will restrain such child from so wandering about, will keep him in his own premises or in some lawful occupation, and will cause him to be sent to school at least 4 months in each year until he becomes 14 years old. Section 291 of the Penal Code provides that such child, when convicted, may be committed to any incorporated charitable reformatory or other institution, and, when practicable, to such as is governed by persons of the same religious faith as the parents of the child, or may make any disposition of the child such as now is or hereafter may be authorized in the cases of vagrants, truants, paupers, or disorderly persons. This section also provides that whenever it shall appear from the warrant of commitment that either parent or any guardian or custodian of such child was present at the examination before such court or magistrate, or had such notice thereof as was by such court or magistrate deemed and adjudged sufficient, no further or other notice required by any local or special statute in regard to the committal of children to such institutions shall be necessary, and such commitment shall in all respects be sufficient to authorize such institution to receive such child in its custody as therein directed.

The learned counsel for the petitioner contends that the commitment is void because it fails to show that any notice was given by the justice to the father or mother of the said child, or that either of them was present at the examination. It must be conceded that the language of the statute plainly contemplates that such notice must be given, as a condition to a valid judgment of conviction. It lies at the very foundation of the jurisdiction of the magistrate, and when he omits such an essential requirement of the statute the conviction cannot be sustained. I do not, however, coincide with the views urged by the learned counsel, that the commitment is void even if notice had been given to the father or mother of the boy. Where a conviction is drawn in question collaterally upon certiorari or habeas corpus, it is the rule that the commitment should be so construed as to sustain the conviction, if possible. I am inclined to think that the commitment is defective in not stating that the parent, guardian, or custodian of the child was present at the examination before the police justice, or had such notice thereof as the magistrate deemed and adjudged sufficient; but it can hardly be treated as a fatal omission, especially in view of the saving clause in the statute, which provides that, whenever any commitment of a child shall for any reason be adjudged or found defective, a new commitment of the child may be made or directed by the court or magistrate, as the welfare of the child may require, and no commitment of a child which shall recite therein the facts upon which it is based shall be deemed or held invalid by reason of any imperfection or defect in form. Pen. Code, § 291; People v. Protestant Episcopal House of Mercy, 133 N. Y. 207, 30 N. E. 853. The police justice was not made a party to this proceeding, and the evidence taken before him, if any, has not been returned, and is not before

me.   I must assume, however, that the magistrate complied with all the requirements of the statute, and summoned the boy's parent or guardian to appear before him on the examination.   The warrant of commitment states the age of the boy, and describes the offense by name, and the conviction and sentence, which is sufficient upon its face to give the court jurisdiction.   The fact that the petitioner refused to traverse the return, and that the petition is not made by the father or mother of the boy, but by his grandmother, is important, as bearing upon the question whether the police justice did not comply with all the requirements of the statute, and acquire jurisdiction to pronounce judgment of conviction.

The learned counsel for the petitioner admitted upon the argument that it appeared from the docket kept by the police justice that the parents of the boy received notice of the examination, but he contends that, notwithstanding the entry in the justice's docket, no notice was actually given.   It is undoubtedly the rule that the proceedings upon which a judgment is rendered in a criminal case must conform strictly to the requirements of the statute, for the reason that the imprisonment is based on the judgment, and not the warrant of commitment.

In People v. Johnson, 110 N. Y. 142, 17 N. E. 684, 686, Chief Judge Ruger says:

"There is nothing in the office which a commitment is designed to perform, requiring a detailed statement of the circumstances attending the commission of the crime.   It is intended merely as a protection to the officer executing it, and as showing the authority upon which he restrains the accused person of his liberty."

Allen, J., in the case of People v. Liscomb, 60 N. Y. 571, said:

"If the process is valid on its face, it will be deemed prima facie legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction."

In People v. Finn, 87 N. Y. 533, where the warrant of commitment stated that the relator was convicted in the court of special sessions in and for the county of New York "of the misdemeanor of petit larceny," it was ordered and adjudged by the court that "for the misdemeanor aforesaid, it appearing that he is under the age of sixteen years, he be sent to the house of refuge."   The motion for the discharge of the prisoner was made upon the ground that the court had no jurisdiction to try the offense, as it was a felony.   The motion was denied, the court holding that it was sufficient that it appeared in the warrant of commitment that the conviction was for an offense of which the special sessions had jurisdiction.

In People v. Baker, 89 N. Y. 465, Judge Earl says:

"A prisoner who has been properly and legally sentenced to prison cannot be released simply because there is an imperfection in what is commonly called the 'mittimus.'   A proper mittimus can, if needed, be supplied at any time; and, if the prisoner is safely in the proper custody, there is no office for a mittimus to perform."

In People v. Protestant Episcopal House of Mercy, 128 N. Y. 189, 28 N. E. 473, 476, it was held that:

"If a warrant thus returned showed the jurisdiction of the officer making it to render the judgment described therein, it was sufficient, under the requirements of the statute."

The court says:

"It would, of course, have been competent for the petitioner in such case to have disputed the facts upon which the jurisdiction of the magistrate was predicated, or to have alleged extrinsic facts tending to show the want of jurisdiction on his part to render the judgment; but, in the absence of such allegations in the traverse, it was the plain duty of the judge to remand the prisoner. Section 2039 of the Code of Civil Procedure, requiring the judge to proceed in a summary way to hear the evidence, has no application, unless the material allegations of the return showing jurisdiction are controverted by a proper traverse. When that is done, the requirement is imperative, and imposes upon the judge or court the duty of hearing the evidence of the parties in respect to the issues made."

The law relating to the commitment of minors to penal and charitable institutions is divided into three classes,—commitments as a punishment for crime, commitments where the proceedings are quasi criminal, and commitments for care and guardianship. Where a minor is convicted of a crime, he may be committed to the reformatory, instead of the penitentiary or state prison, where he would be compelled to associate with hardened criminals. Where a complaint is made that the child is incorrigible, a truant, and beyond the control of his parents, the proceedings are of a quasi criminal nature, and he may be committed to the state industrial school or a charitable institution, for the purpose of reforming him. As to such infant, the institution to which he is committed is a home and a school, not a prison. It was remarked by Bartlett, J., in Re Knowack, 158 N. Y. 487, 53 N. E. 677, that the main object of such proceedings is to reform the child, if possible, and the commitment is governed by different rules than either of the other classes. The third class are those children who are homeless and destitute, and in many cases abandoned by those whose duty it is to protect them. In this class of cases the state intervenes to protect them. The proceedings under this humane statute are not of a criminal nature; neither is a commitment hedged about with all those formalities that are required where the minor is convicted of a crime. Cases might arise where the court would not take a child from the industrial school, or any charitable institution, and deliver it to the father, even though the commitment was void, where it appeared upon the application for the child's release that the father was wholly unfit to have the custody and education of the child, by reason of intemperate habits and grossly immoral conduct. Neither would the court be justified in turning a child of tender years out of doors in the dead of winter, with no person to receive and care for its welfare. In such cases and under such circumstances the court would be doing a great injustice to the infant to discharge it from the institution. Chancellor Kent said:

"Courts of justice may, in their sound discretion, and when the morals or safety or interests of the children strongly require it, withhold the infants from the custody of the father or mother, and place the care and custody of them elsewhere." 2 Kent, Comm. 205.

This may be considered an arbitrary power, but, where it appears to the court that the parents are totally unfit to have the care and custody of the infant, the court is not bound to discharge the child and send it adrift, knowing that its future prospects will be ruined. The power of the supreme court, under its general equity jurisdiction, to interfere and take the children from the custody and control of their parents, where they are totally unfit to discharge the duties of parents towards their children, has been fully recognized in numerous cases. But when the right of the parents to the custody of their children is resisted on the ground of their unfitness for the trust, or other causes, a proper regard for the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proof. The breaking of the tie which binds them to each other can never be justified without the clearest and most substantial reasons. The sundering of such ties is a serious matter, and should always be approached and considered by the courts with great caution, and the highest sense of responsibility. The father has a legal right to the society, education, and earnings of his child, which cannot be taken from him by a summary proceeding, when the charge is vagrancy, without giving him notice of the examination. It would be an unjust rule of law that would authorize a final adjudication upon the right of the father to the care and custody of his minor child upon such a charge, without giving him an opportunity of being heard, and it would be very doubtful whether such a statute could be sustained. However important it may be that incorrigible and truant children should be arrested and sent to some institution authorized by statute to receive them, yet it never should be forgotten that even the poor children and their parents have their rights under the law, and they are entitled to its protection. If a child who has committed no crime can be taken from its parents and committed to a penal or charitable institution during its minority, without giving them an opportunity of being heard in defense of their child and their right to its custody, then the law is in conflict with the fundamental principles of the constitution, which provides that no person shall be deprived of life, liberty, or property without due process of law. Can it be said that these constitutional principles and safeguards are not violated when a man's child is taken from him and sent to some penal or charitable institution, to be confined during its minority, without giving him an opportunity of being heard? The statute is a humane one, and should not receive a construction inconsistent with one of the dearest rights of humanity. The poor man's love and affection for his children is as strong as that in other and higher spheres in society. It frequently happens, however, that poor people are unfortunate and unable to furnish all the necessary comforts to their children, and to constantly guard and prevent them from wandering upon the streets. It is not to meet such temporary emergencies that the statute was enacted, but to provide against culpable neglect of the parents to care for their children. Some boys are especially fond of study and love to go to school, while others prefer out of door games and amusements; yet it cannot be said that the latter are vagrants,

merely because they have a fondness for out of door amusements and sports, and occasionally run away from school without the consent or knowledge of their parents, and are found wandering or playing upon the streets. Owing to the summary character of the proceedings in this class of cases, it is possible that the commitment of children might occasionally be made upon a false and groundless charge. In such cases, however, neither the infants nor the parents are without remedy. The jurisdictional power of an inferior court to deprive a child of its liberty may be inquired into by proceedings in habeas corpus, or the sufficiency of the evidence to justify the conviction may be reviewed upon appeal by the higher courts. So long as the management of these institutions and the inmates is amenable to the courts, there need be no apprehension that the personal liberty of the children and rights of the parents will be encroached upon, especially where direct and ample remedies by habeas corpus and appeal are provided for the protection of the legal rights of parents and their children.

If the return in this case had been traversed, and from the evidence it appeared that the boy was committed to the industrial school without giving his parents an opportunity of being heard, I should hold that the magistrate exceeded his authority, and that the commitment was illegal and void; but, in the absence of any such evidence, I consider the commitment valid upon its face, and that the relator is lawfully detained by the board of managers of said state industrial school. The proceedings, therefore, are dismissed.