PEOPLE ex rel. HUBERT v. KAISER, Warden.

(Supreme Court, Appellate Division, First Department. May 10, 1912.)

1. HABEAS CORPUS (§ 113*)—DISCHARGE—BAIL—APPEAL.

Code Civ. Proc. § 2058, provides that an appeal may be taken from an order refusing to grant a writ of habeas corpus, or from a final order made on the return of such writ, to discharge or remand a prisoner, or to dismiss the proceedings, and that where a final order is given discharging a prisoner, on his giving bail, an appeal therefrom may be taken before bail is given, but, where the appeal is taken by the people, the discharge of the prisoner on bail shall not be stayed thereby. *Held,* that where on habeas corpus a prisoner was discharged absolutely and not conditionally on giving bail, and was remanded to the custody of another than respondent to await trial on the indictment, the fact that he gave bail or that he was so remanded did not preclude an appeal by the people from the order of discharge.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. § 113.*]

2. HABEAS CORPUS (§ 122*)—SUSPENSION—STATUTES.

Code Civ. Proc. § 2058, authorizing an appeal from an order refusing to grant a writ of habeas corpus or from a final order made on the return of such writ to discharge or remand a prisoner, or to dismiss the proceedings, etc., is not in violation of Const. U. S. art. 1, § 9, subd. 2, and Const. N. Y. art. 1, § 4, prohibiting the suspension of the privilege of the writ of habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 123; Dec. Dig. § 122.*]

3. CRIMINAL LAW (§ 301*)—PLEAS—NOT GUILTY—WITHDRAWAL—CHANGE.

Code Cr. Proc. § 337, conferring on the court discretion at any time before judgment on a plea of guilty to permit its withdrawal and substitute a plea of not guilty, does not deprive the court of power to allow the withdrawal of a plea of not guilty, and permit the substitution of a plea of guilty.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 687; Dec. Dig. § 301.*]

4. CRIMINAL LAW (§ 980*)—SENTENCE ON PLEA OF GUILTY.

Where accused pleaded not guilty, and thereafter sought and obtained leave to change his plea to one of guilty which he was permitted to do

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after consulting with two different attorneys, the cause was then in the precise situation so far as the power of the court to pronounce sentence was concerned as though a verdict of guilty had been returned, and nothing short of a withdrawal of that plea by leave of court could change that situation.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2493–2496; Dec. Dig. § 980.*]

5. CRIMINAL LAW (§ 980*)—SENTENCE ON PLEA OF GUILTY.

Where a prisoner accused of burglary in the first degree withdrew his plea of not guilty, and pleaded guilty after which he was examined before sentence, the court was not bound to accept at its face value his statement that he found the basement gate, the ash hoist, and cellar door he was charged with having opened, open in the nighttime for him to enter, and to find thereon that he was for that reason not guilty of burglary.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2493–2496; Dec. Dig. § 980.*]

6. BURGLARY (§ 9*)—WHAT CONSTITUTES—"BREAK."

Penal Law (Consol. Laws 1909, c. 40) § 400, defines the work "break" as breaking or violently detaching any part, internal or external, of a building, opening any outer door of a building, or any window, shutter, scuttle, or other thing closing an opening, or obtaining an entrance by or through any pipe, chimney, or other opening. *Held*, that the admission that accused in the nighttime without invitation, right, or lawful occasion entered the dwelling of another and therein committed an offense was sufficient to sustain a conviction of burglary in the first degree, notwithstanding he testified that he entered by a basement gate, ash hoist, and cellar door, all of which he found open.

[Ed. Note.—For other cases, see Burglary, Cent. Dig. §§ 6–12; Dec. Dig. § 9.*

For other definitions, see Words and Phrases, vol. 1, pp. 862–866; vol. 8, pp. 7592–7593.]

7. HABEAS CORPUS (§ 30*)—GROUNDS.

Where a prisoner was convicted on his plea of guilty, the court having jurisdiction to pronounce sentence and render judgment, he could not be discharged on habeas corpus, though the record disclosed the grossest abuse of discretion or the most palpable and harmful errors, since the writ cannot serve the purposes of an appeal.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

8. HABEAS CORPUS (§ 1*)—SCOPE OF WRIT.

The sole function of a writ of habeas corpus is to relieve from unlawful imprisonment, and the sole inquiry is whether the mandate or the judgment, by virtue of which the prisoner is detained, is void.

[Ed. Note.—For other cases see Habeas Corpus, Cent. Dig. §§ 1, 3; Dec. Dig. § 1.*]

9. HABEAS CORPUS (§ 92*)—SCOPE OF INQUIRY.

On writ of habeas corpus, the sentence imposed cannot be reviewed except so far as to ascertain whether it was in excess of the court's power.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. § 92.*]

Appeal from Special Term, New York County.

Habeas corpus by the People, on the relation of Martin F. Hubert, against Harry M. Kaiser, as Warden and Agent of Clinton Prison, to procure the discharge from such prison of Folke Engle Brandt.

From a final order discharging the prisoner, the warden appeals. Reversed and prisoner remanded.

See, also, 135 N. Y. Supp. 694.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Thomas Carmody, Atty. Gen., Charles S. Whitman, Dist. Atty. of New York County, and Arthur S. Hogue, Dist. Atty. of Clinton County (Charles F. Bostwick and Robert S. Johnstone, on the brief), for appellant.

Mirabeau L. Towns, for respondent.

MILLER, J. On March 22, 1907, the grand jury of the county of New York presented an indictment to the Court of General Sessions against Folke Engle Brandt containing three counts, charging him with the crimes of burglary in the first degree, grand larceny in the first degree, and criminally receiving stolen property, respectively. He appeared in court with counsel on March 25, 1907, and pleaded not guilty. On March 28, 1907, by leave of the court, he withdrew his plea of not guilty and pleaded "guilty of burglary in the first degree," of which an entry was made upon the minutes of the court. It does not appear whether his counsel was in court at the precise time of changing his plea, but it does appear by an affidavit read on his behalf in this proceeding that at that time the judge presiding requested the affiant, then an attorney in good standing, who happened to be in court on other business, to ascertain whether he understood the proceeding, and, in compliance with that request, said attorney interrogated him and ascertained that he did. The stenographer's minutes show that after the plea of guilty was received the prisoner was sworn and interrogated at length by the court respecting his antecedents and the circumstances of the crime. In the course of that examination he admitted that he entered the dwelling house of Mortimer L. Schiff at night, gaining admission through a basement gate, an ash hoist, and a door into the cellar; that he armed himself with a bowling pin and a carving knife, went to Mr. Schiff's room, the location of which he knew, lay in wait for two hours, and, upon Mr. Schiff's return, assaulted him with the bowling pin. He asserted that he found the basement gate open, the hoistway uncovered, and the cellar door partly open for ventilation, that his purpose was to obtain pecuniary assistance, and he denied that he took any articles of jewelry. Among other questions put to him and answers given were the following:

"Q. You know now, at present, at this moment—you fully appreciate what you are saying, do you not? A. Yes. Q. You know you have entered a plea of guilty to an indictment charging you with the crime of burglary in the first degree? A. Yes, sir. Q. You know what the word 'guilty' means—you confess to the commission of that crime? A. Yes."

At the close of that examination he stated:

"I have nothing more to say, but prefer to consult with my own lawyer."

On April 4, 1907, he appeared in court for sentence, represented by counsel, the attorney whom the court had asked on March 28th to

ascertain whether he understood the proceeding, and who, according to said affidavit, had in the meantime been requested by Brandt to represent him. Said counsel made an appeal to the court for clemency; but, although he stated that both he and his client realized the gravity of the situation, he made no request for leave to withdraw the plea of guilty. He did, however, produce certain articles, which he said were found in the prisoner's possession and belonged to Mr. Schiff, evidently the articles of jewelry which the prisoner had under oath on March 28th denied taking, and stated that the prisoner desired to give them up and to come before the court "in a state of deep repentance." At the conclusion of the remarks of counsel, a detective sergeant was sworn, a report respecting the prisoner's record made by the witness to an inspector of police was read, and a check was produced which the prisoner first denied, and then admitted, forging. At the conclusion of the proceedings on April 4th, the court sentenced the prisoner to imprisonment in a state prison for the term of 30 years, and upon a commitment regular in form, reciting a conviction by confession of burglary in the first degree, he was committed to Sing Sing Prison, and later, pursuant to law, was transferred to Clinton Prison. On February 9, 1912, a writ of habeas corpus returnable at the Special Term, New York county, was allowed by a justice of the Supreme Court upon the petition of the relator, who styled himself "the next friend of Folke Engle Brandt." The defendant returned that the prisoner was detained by virtue of a judgment of conviction of the Court of General Sessions of the Peace of the City and County of New York. A copy of the commitment was attached to the return, and the original was produced for the inspection of the court. A traverse, verified by the relator, "to the best of his information and belief" not by the prisoner, as is required by section 2039 of the Code of Civil Procedure, was filed, in which it was averred, among other things, that Brandt was never tried for the crime charged in the indictment and never pleaded guilty. The indictment, the stenographer's minutes of the proceedings thereon, a certified copy of the court minutes taken from the clerk's minute book and the affidavit, hereinbefore referred to, were read in evidence, as the order appealed from recites, in support of the traverse, and upon the record thus made the matter was submitted to the court for decision with the acquiescence of all parties, and thereupon an order was entered, discharging the prisoner from the custody of the defendant under the said judgment of conviction, and remanding him to the custody of the warden of the City Prison of the City of New York to await trial on the indictment of March 22, 1907. From that order as resettled, the Attorney General and the district attorneys of New York and Clinton counties have appealed in the name of the people of the state of New York.

[1] A preliminary question is presented by the respondent's motion to dismiss the appeal on the ground that the order is not appealable, and that the appeal was not taken in accordance with the provisions of section 2058 of the Code of Civil Procedure, which provides:

"An appeal may be taken from an order refusing to grant a writ of habeas corpus, or a writ of certiorari, as prescribed in this article, or from a final

order, made upon the return of such writ, to discharge or remand a prisoner, or to dismiss the proceedings. Where a final order is made, to discharge a prisoner, upon his giving bail, an appeal therefrom may be taken, before bail is given; but where the appeal is taken by the people, the discharge of the prisoner upon bail. shall not be stayed thereby. An appeal does not lie, from an order of the court or judge, before which or whom the writ is made returnable, except as prescribed in this section."

It is stated that the prisoner has given bail pursuant to the second provision of the order appealed, from, and what purports to be a copy of the bail bond is to be found in one of the records before us. But plainly that is not the bail referred to in said section. The relator was discharged absolutely from the custody of the defendant, not conditionally upon giving bail. The direction for that discharge finally determined the proceeding, and it is of no consequence on this appeal that a provision was incorporated in the order remanding the prisoner to the custody of some one other than the defendant to await trial on the indictment, though it may be said in passing that it is not apparent how the prisoner is to be tried on an indictment to which he has pleaded guilty, so long as that plea stands. Moreover, the first sentence of the section quoted gives the unqualified right to appeal from a final order discharging the prisoner. The succeeding sentence is permissive, and was plainly intended to authorize an appeal before bail is given, where the discharge, instead of being absolute, is conditional, and to provide that in such case an appeal by the people should not stay the discharge of the prisoner upon giving bail.

[2] But it is said that said section is invalid for suspending the privilege of the writ of habeas corpus in violation of subdivision 2, § 9, art. 1, of the Constitution of. the United States, and section 4, art. 1, of the Constitution of the state of New York. That provision, with its prototype (section 70, 2 Rev. St. 573), has been unchallenged as the statute law on the subject in this state since 1830. Appeals in the name of the people have been entertained without question by the General Term and the Appellate Division of the Supreme Court and by the Court of Appeals. Vide People v. Seaton, 25 Hun, 305; People v. Terry, 42 Hun, 273; People v. Carter, 48 Hun, 165; Matter of Scrafford, 59 Hun, 320, 12 N. Y. Supp. 943; People v. Keeper of Penitentiary, 125 App. Div. 137, 109 N. Y. Supp. 531; People v. House of Mercy, 133 N. Y. 207, 30 N. E. 853. The United States Supreme Court has frequently entertained appeals under an act of Congress from judgments or orders discharging prisoners on habeas corpus. Vide Cunningham v. Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55; Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; Harkrader v. Wadley, 172 U. S. 149, 19 Sup. Ct. 119, 43 L. Ed. 399. Joseph H. Choate and James C. Carter, who represented the prisoner in the Cunningham Case, evidently did not consider the point worth raising, and, as far as the research of counsel goes, it has been raised in but one case, and in that was quite summarily disposed of by the court. Macready v. Wilcox, 33 Conn. 321. While it might be of historical interest, it is quite unnecessary in this case to determine the point whether at common law a writ of error would lie to review a decision on habeas corpus. Much

learning on the subject was displayed in the celebrated case of Yates v. People, 6 Johns. 337, the opinions in which went to the verge of being contentious. Chancellor Kent, who stoutly maintained that the writ of error would not lie at common law, nowhere suggested that a review of a decision on habeas corpus would suspend the privilege of the writ or in anywise impair its efficiency. In that case the writ of error was prosecuted by the prisoner, but Chancellor Kent contended that, if allowed to the prisoner, it must equally be allowed to the people. His argument was based upon authority and upon the principle that a decision on habeas corpus was not of the character of a final and definitive judgment, on which alone a writ of error lay at common law.

[3] It is urged in support of the order appealed from that the Court of General Sessions had no power to permit the plea of not guilty to be withdrawn, and that the formal plea of guilty entered upon the minutes of the court, though never withdrawn, was nullified by the subsequent statements of the prisoner, showing that the element of breaking necessary to constitute the crime of burglary in the first degree was absent.

Pleas to an indictment are of three kinds: (1) A plea of guilty; (2) a plea of not guilty; and (3) a plea of a former judgment of conviction or acquittal of the crime charged. Section 332, Code Cr. Proc. "Every plea must be oral, and must be entered upon the minutes of the court." Id. § 333. If the defendant pleads guilty to the crime charged in the indictment, the plea must be entered in substantially the following form: "The defendant pleads that he is guilty." Id. § 334. "The court may in its discretion, at any time before judgment upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted." Id. § 337. "After a plea or verdict of guilty, * * * the court must appoint a time for pronouncing judgment." Id. § 471. Express statutory authority for allowing the withdrawal of a plea of guilty does not deprive the court of the power to allow the withdrawal of a plea of not guilty, and it seems strange to hear a power challenged which has been exercised without question since the earliest times. At common law obstinately standing mute upon arraignment was equivalent to a conviction in cases of the highest and lowest description of crimes; i. e., high treason and minor offenses. In other felonies the punishment of peine forte et dure, death by famine, cold, and pressure, was the consequence of silence until by 12 Geo. 3, c. 20, that punishment was abrogated, and it was enacted that a person standing mute on arraignment on any indictment for felony or piracy should be convicted of the offense. Confession was always regarded as the highest kind of conviction, and could be received after plea of not guilty recorded even in the case of high treason. Chitty on Criminal Law, pp. 425–429, and citations in marginal notes. In some jurisdictions it is competent for the court to pronounce sentence of death on a plea of guilty alone. Vide Green v. Commonwealth, 12 Allen (Mass.) 155. The prisoner then stood before the court convicted on his plea of guilty of the crime of burglary in the first degree.

[4] The cause was in the precise situation, as far as the power to pronounce sentence was concerned, as though a verdict of guilty had been rendered by a jury, and nothing short of a withdrawal of that plea with leave of the court could change that situation., A week intervened the plea and the sentence. Every precaution appears to have been taken by the court to apprise the prisoner of the gravity of his situation, and to make sure that he understood the proceedings and the possible consequences of a plea of guilty. He had the advice of two different counsel, and so far from requesting leave, or even intimating a desire, to withdraw his plea, he persisted in standing upon it.

[5] It is a startling proposition that statements made in the desire to secure clemency by a person convicted of crime, whether upon a verdict or a plea, can have the effect of nullifying the conviction, or constitute ground for a discharge on habeas corpus, possibly after the death or disappearance of necessary witnesses to prove the offense charged. Every judge of any experience in the administration of the criminal law knows that such statements cannot as a rule be relied upon, and surely the judge in this case was not bound to accept at its face value the statement of the prisoner that he found the basement gate, the ash hoist, and cellar door of a New York City dwelling conveniently open in the nighttime for him to enter without being technically guilty of burglary. Even upon the prisoner's own statement, the manner in which he entered the house meets the statutory definition of breaking.

[6] It is not indispensable to the conviction of the crime of burglary of a person, who in the nighttime, without invitation, right, or lawful occasion, enters another's dwelling and therein commits a crime, that a witness should be produced who saw the unlawful entry. The word "break," as used in article 38 of the Penal Law (Consol. Laws 1909, c. 40), relating to burglary, is thus defined by section 400, corresponding to section 499 of the Penal Code as it was in 1907:

"(1) Breaking or violently detaching any part, internal or external, of a building; or, (2) opening, for the purpose of entering therein, by any means whatever, any outer door of a building, or of any apartment or set of apartments therein separately used or occupied, or any window, shutter, scuttle, or other thing, used for covering or closing an opening thereto or therein, or which gives passage from one part thereof to another; or, (3) obtaining an entrance into such a building or apartment, by any threat or artifice used for that purpose, or by collusion with any person therein; or, (4) entering such a building or apartment by or through any pipe, chimney, or other opening, or by excavating, digging, or breaking through or under the building, or the walls or foundation thereof."

[7] This record discloses no error or irregularity which would justify the interference of this court, even if the case were here on an appeal from the judgment of conviction. The question for decision on a writ of habeas corpus is confined within narrower limits, and in this case might have been disposed of on the bare statement that the court had jurisdiction of the defendant and of the subject-matter, the offense, which is conceded, and that, even if the traverse, verified "to the best of his information and belief" by one who did not appear to

have any knowledge or information upon the subject, was sufficient to raise an issue, the uncontroverted record evidence offered in support of the traverse established that the prisoner was convicted upon his plea of guilty, and that the court was therefore empowered to pronounce sentence and render judgment. See People v. House of Mercy, 128 N. Y. 180, 28 N. E. 473. Even if the record disclosed the grossest abuse of discretion, the most palpable and harmful errors, we could not consider them on habeas corpus.

The statute (section 2032 of the Code of Civil Procedure), also challenged as being unconstitutional, provides inter alia:

"The court or judge must forthwith [i. e., after examination into the facts alleged in the return and into the cause of imprisonment or restraint] make a final order to remand the prisoner, if it appears that he is detained in custody for either of the following causes, and that the time for which he may legally be so detained has not expired; * * * (2) by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction. * * *"

It would be a work of supererogation at this day to discuss or analyze authorities in support of principles which have become elementary, but the occasion seems to require the restatement of them. The writ of habeas corpus is not, and never has been, a writ of review.

[8] Its sole function is to relieve from unlawful imprisonment. And the sole inquiry upon it is whether the mandate or the judgment by virtue of which the prisoner is detained is void. Where it appears that the prisoner is detained by virtue of a final judgment of a court of competent jurisdiction, the court or the judge has no alternative but to remand the prisoner, unless it affirmatively appears that there was an utter want of power or jurisdiction to render the judgment. Every presumption must be indulged in support of the judgment. Error or the abuse of discretion in the exercise of jurisdiction does not constitute the want of jurisdiction. Though it is not necessary to cite authority in support of such familiar rules, we refer to the most recent decisions of the Court of Appeals of this state and of the United States Supreme Court on the subject. People ex rel. Scharff v. Frost, 198 N. Y. 110, 91 N. E. 376, 139 Am. St. Rep. 801; Harlan v. McGourin, 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849; Matter of Gregory, 219 U. S. 210, 31 Sup. Ct. 143, 55 L. Ed. 184. In the Scharff Case, as here, the defendant was convicted on a plea of guilty. Subsequently, and before sentence was pronounced, an event occurred of which the court was informed which was an absolute bar to judgment. But the Court of Appeals held that there was not such utter lack of jurisdiction or power to pronounce judgment as entitled the relator to relief by habeas corpus.

One case is cited by the respondent which is said to bear some resemblance to this. Gardner v. People, 106 Ill. 76. We fail to discover any similarity in the facts of that case, but it is enough to say that the decision was made on a writ of error.

[9] We have nothing to do with the sentence, except to determine whether it was in excess of the court's power. People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211. Burglary in the first

degree is punishable by imprisonment in a state prison for not less than 10 years (Pen. Law, § 407), and may be punished by imprisonment for life (Id. § 2191).

The order should be reversed, the writ dismissed, and the prisoner remanded to the custody of the defendant.

LAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. I concur in the reversal of the order appealed from.

The petition on which the writ was granted alleged that the prisoner was held under a commitment made by a judge of the Court of General Sessions of the Peace in the City and County of New York upon an indictment charging the prisoner with the crime of burglary in the first degree, upon an alleged plea of the prisoner of guilty of said crime; that the record disclosed that the crime of burglary in the first degree was never committed by the prisoner at the time and place charged in the indictment; that the prisoner did not plead guilty to the crime of burglary in the first degree before the said judge, but did state to the said judge facts showing that he had not committed the crime of burglary in the first degree. The return to the writ presented a copy of the judgment of the Court of General Sessions committing the prisoner to imprisonment in the state prison at hard labor for the term of 30 years. To that return the relator filed a traverse stating that the prisoner was never tried for the crime, and that he never pleaded guilty to said crime. The proceeding coming before the court on the petition, the return, and traverse, there was submitted an extract from the minutes of the Court of General Sessions, from which it appeared that the prisoner on March 28, 1907, "now pleads guilty of burglary in the first degree," and that on April 4, 1907, on conviction of the prisoner by confession of burglary in the first degree, there was judgment that he be imprisoned in the state prison at hard labor for the term of 30 years; and a certified copy of the judgment of the court. It thus appears that this judgment was entered on a plea of guilty; but both in the petition and traverse the relator alleges that the prisoner did not plead guilty. It would appear, therefore, that, if the question whether the prisoner did plead guilty could be inquired into in this proceeding, a question of fact was presented which the relator would have been entitled to have determined as a question of fact, and this court would not be justified in dismissing the writ and remanding the prisoner.

The writ of habeas corpus is regulated by the Code of Civil Procedure. By section 2016 it is expressly provided that a person is not entitled to either of the writs specified in the last section, namely, a writ of habeas corpus or a writ of certiorari, "where he has been committed, or is detained, by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction." By section 2019 of the Code of Civil Procedure it is provided that the petition must state that the prisoner was not committed and is not detained by virtue of any judgment, decree, final order, or process

specified in section 2016 of the act. Section 2020 provides that the writ must be granted unless it appears from the petition itself or the documents annexed thereto that the petitioner is prohibited by law from prosecuting the writ. Upon the return to the writ, it appeared that the petitioner was held in a state prison in the state of New York upon a final judgment of the Court of General Sessions of the Peace of the City and County of New York, and under section 2032 of the Code, subd. 2, it was the duty of the judge forthwith to remand the prisoner where it appeared that the prisoner was held under the final judgment of a court of this state. The sole question presented upon the return and the traverse to the return where it appeared that the prisoner was held under a final judgment was the jurisdiction of the court which granted the judgment, and that necessarily depended upon the jurisdiction of the court as to the subject-matter of the controversy and the person of the defendant. The prisoner was indicted for burglary in the first degree, and was arrested and brought before the court on that indictment. He did not claim that the Court of General Sessions of the Peace for the City and County of New York had not by law jurisdiction to proceed against a person charged with burglary in the county of New York, that the grand jury impaneled in that court had not power to indict for the crime, and that the court had not power to try a person thus indicted who had been arrested and was before the court and upon either a plea of guilty or upon a conviction award judgment. Nothing appeared by the traverse to the return which affected the jurisdiction of the court over the subject-matter of the controversy before it or over the person of the defendant, and therefore the judge or court before whom the writ of habeas corpus was pending was required by the express provision of the Code to remand the prisoner and dismiss the writ. The regularity of the proceeding before the court, the guilt or innocence of the prisoner, the sufficiency of the evidence upon which the indictment had been obtained, the proceeding before the court where the plea of guilty was entered, these were all matters into which neither the judge nor the court could inquire. The one controlling fact was that this prisoner was detained under the final judgment of a court of competent jurisdiction, and, upon that fact appearing, the writ of habeas corpus had served its purpose, the cause of the detention of the prisoner had been ascertained as the final judgment of a court of competent jurisdiction, and any proceeding to review that judgment or determine whether or not it was justified was to be determined in another and proper proceeding.

It is an elementary rule that:

"Where the court has jurisdiction of the parties and the subject-matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding, is not open to attack or impeachment, by parties or privies, in any collateral action or proceeding whatever" (Black on Judgments, § 245); and "the rule against collateral impeachment applies to every judgment, order, decree, or judicial proceeding, of whatever species, that is not absolutely void. If the judgment is void on its face, it is, of course, a mere nullity and of no avail for any purpose, and this may be urged against it whenever it is brought in question. But otherwise, whether it be regular or irregular, cor-

rect or erroneous, valid or voidable, it is not subject to collateral attack" (Id. § 246).

And this rule applies in a proceeding upon a writ of habeas corpus, as "a proceeding of this nature is undoubtedly a collateral attack upon the judgment, and exceptional as the remedy is, and beneficent as is the purpose it subserves, there is no' good reason for permitting it to be made the vehicle for objections to the judgment or sentence which could not be urged against it in any other collateral proceeding." Id. § 254. "If the question is upon the judgment of a court of competent jurisdiction, the petitioner in habeas corpus cannot impeach it on the ground of any error or irregularity in the proceedings or sentence of the court which does not go to the extent of impairing or taking away its power or jurisdiction to act in the case." Id. § 255. And in cases cited by the author it has been held:

"Nor can advantage be taken in this manner of a defect in the verdict, although it would be sufficient to cause the reversal of the judgment on appeal or writ of error; nor of any errors made by the court in granting, modifying or setting aside orders in criminal cases; nor of any errors alleged to have been committed in the determination of questions arising on a motion in arrest of judgment.  *  *  *  It is the same of irregularities in the proceedings. On habeas corpus there can be no inquiry into a defective or irregular selection of the grand jury; nor whether the indictment upon which the judgment was given, being regular on its face, was ever in fact found by a grand jury.  *  *  *  Nor of the fact that the court pronounced judgment upon a verdict on a charge of felony during the enforced absence of the petitioner in jail." Id. § 255.

It is also a settled rule that:

"If the record shows the facts necessary to confer jurisdiction, or recites that jurisdiction did in fact attach, its averments are final and conclusive in every collateral proceeding, and cannot be contradicted by any extraneous evidence.  *  *  *  The record is conclusively presumed to speak the truth, and can be tried only by inspection." Id. § 273, and cases there cited.

There is but one exception to this rule as to the verity of recitals in the judgment or record of the court. Where the recitals allege facts essential to sustain the jurisdiction of the court either over the subject-matter of the controversy or person of the defendant, and where the judgment is attacked for lack of jurisdiction in one of these essential particulars, the existence of the facts necessary to confer jurisdiction upon the court can be attacked. But, as I understand the rule, in every other particular the statements in the record are not open to collateral attack. The record presented in this case establishes the fact that the Court of General Sessions had jurisdiction over the subject-matter of the controversy and over the person of the defendant. His plea of guilty is entered on the record and the fact of that plea is not open to controversy in this proceeding. Upon his plea of guilty, the court was required to appoint a time for pronouncing judgment (section 471, Code Cr. Proc.), and, when the defendant appears for judgment, if no sufficient cause was shown as provided in section 481 (Code Cr. Proc.), the court must thereupon render judgment. A judgment was therefore rendered which

then became a final judgment of a court of competent jurisdiction, and which under the provisions of the Code of Civil Procedure before cited required the court to dismiss the writ and remand the prisoner.

I therefore concur in the reversal of this order.

LAUGHLIN, J., concurs.

