MUNICIPALITY OF QUEBRADILLAS, PETITIONER, v. EXECUTIVE
SECRETARY, RESPONDENT.

## PETITION for a Writ of Mandamus against the Executive Secretary of Porto Rico.

No. 170.—Decided March 11, 1919.

MANDAMUS—JURISDICTION.—The Supreme Court of Porto Rico has original ju-
risdiction to issue writs of mandamus in accordance with an Act passed
by the Insular Legislature in 1903, although Section 48 of the Organic Act
of March 2, 1917, commonly known as the Jones Act, only mentions the
district courts as authorized to issue such writs.

ID.—ID.—PRIVATE INTERESTS—LEGISLATIVE SESSION.—The jurisdiction of the Su-
preme Court cannot be invoked for the mere purpose of determining the
legality of a legislative session, but it can be so invoked when private inter-
ests are involved.

ID.—ID.—RECESS OF LEGISLATURE.—The fact that a petition for a writ of man-
damus does not state the reasons why the writ should issue originally from
the Supreme Court, as required by its Rule 69, does not prevent the exercise
of its jurisdiction when it appears from the petition that the writ is to be
directed to a high public official and involves the consideration of a question
of such importance as the legality of a recess of the Legislature for a long
period of time.

ID.—PROMULGATION OF LAWS—EXECUTIVE SECRETARY.—Inasmuch as Section 22
of the Organic Act imposes upon the Executive Secretary the obligation to
record, preserve and promulgate the laws enacted by the Legislature, it is
obvious that any person benefited by an act is entitled to have it recorded
and promulgated like the other laws, and may maintain a writ of mandamus
against the Executive Secretary.

ID.—LEGISLATIVE SESSIONS—DURATION OF SESSIONS.—It is evident from Sections
31 and 33 of the Organic Act of Porto Rico that the Legislature can hold
two kinds of sessions; namely, an ordinary session, commencing on a day
fixed by law, and an extraordinary session, held when called by the Governor.
The latter must necessarily terminate within ten days, Sundays and holidays
excluded, while the ordinary session has no fixed time of duration, but
terminates at the discretion of the Legislature itself. In fixing what pay
the Senators and Representatives shall receive during the first ninety days
of an ordinary session and what they shall receive when in session for more
than ninety days, the Organic Act clearly expressed the intention that the
Legislature might hold an ordinary session for more than ninety days, the
reduction in the *per diem* being merely a restriction intended as a stimulus
to diligent action which cannot have the scope of limiting the regular session
to only ninety days.

ID.—ID.—ID.—RECESS APPOINTMENTS.—Although it is true that the Governor has
power to call an extraordinary session of the Legislature whenever he con-
siders it necessary for the public interest, and that while the Legislature is
in ordinary session an extraordinary session cannot be called; nevertheless,
this court is not authorized to limit arbitrarily the duration of the regular

session, for notwithstanding the fact that the Congress must have had this in mind, it did not see fit to place a rigid limitation upon the duration of the session and therefore this court cannot reduce or confine it to ninety days.

Nor is it argument against the duration of the session for more than ninety days that the Governor is deprived of his power to make recess appointments, because this begs the question at issue and cannot prevail for the reason that he can make such appointments although he must submit them to the Senate for its approval, while if the Legislature is not in session the appointments are effective until the Legislature convenes, or until a session of the Senate is called. The same argument is applicable to the period of thirty days allowed the Governor for approving a bill when the Legislature had adjourned before the expiration of the ten days allowed him for approving it when the Legislature is in session.

ID.—ID.—ID.—ADJOURNMENT—RETURN OF BILLS BY THE GOVERNOR.—It is evident that as the Legislature may adjourn at any time for more than three days to reconvene on a fixed date, such adjournment does not finally terminate the regular session nor bring the Legislature to a close, because after the expiration of the temporary recess it may lawfully convene again to continue the same regular session and this does not prevent the Governor from returning the bills which he does not approve, for he is so prevented only when the session is finally adjourned. According to the law, there are three classes of adjournments: one by either of the houses not to exceed three days; another which is temporary and may exceed three days taken by the common consent of both houses to reconvene on a fixed date; and the final adjournment, or adjournment *sine die.* The first and second do not preclude the reconsideration of the bills returned without the Governor's approval, but the last does, and this is the only adjournment referred to in Section 34 of the Organic Act.

ID.—ID.—ID.—ID.—ID.—The former Organic Act contained a similar provision regarding the duty of the Governor to return to the house of their origin, within ten days, such bills as he did not approve, and in 1902 the Legislative Assembly of Porto Rico enacted Section 39 of the Political Code, providing that if, on the day the Governor desires to return a bill without his approval to the house in which it originated, that house has adjourned for the day, he may deliver the bill with his message to the presiding officer, secretary, or clerk, and if neither can be found upon reasonable search, then to any member of such house, and such delivery is as effectual as though returned in open session, if the Governor, on the first day the house is again in session, by message, notifies it of such delivery. That section of the Political Code is still in force, according to Section 57 of the Jones Act, for it is not in conflict with any of its provisions.

The facts are stated in the opinion.

*Mr. Miguel Guerra* for the petitioner.

*Hon. Howard L. Kern, Attorney General,* for the respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

The first and most important preliminary question raised

by the Executive Secretary of Porto Rico, Ramón Siaca Pacheco, in appearing before this court pursuant to the alternative writ of mandamus directed to him in the present case, is that referring to the jurisdiction of this court to grant writs of mandamus. He asserts that although such jurisdiction was conferred upon this court by the act of the Insular Legislature of 1903, the court was deprived of that jurisdiction on March 2, 1917, when the President of the United States signed the act of Congress to provide a civil government for Porto Rico, and for other purposes, popularly known as the Jones Act, for the reason that section 40 thereof provides that the jurisdiction of the courts of Porto Rico shall continue to be as now provided until otherwise provided by law, and section 48 authorizes only the district courts to grant writs of mandamus, wherefore such jurisdiction is conferred exclusively upon the district courts and the act of 1903 is repealed. The Executive Secretary even goes so far as to maintain that the Legislature cannot give this court original jurisdiction to issue writs of mandamus, except in cases in which the power may be necessary to the exercise of the appellate jurisdiction of the court.

We will disregard the last question, as it is not one for discussion here, because the Legislature has enacted no law since the passage of the Jones Act granting us such jurisdiction. We shall consider only whether the act of 1903, which conferred original jurisdiction upon this court to issue writs of mandamus, was repealed by the said sections of the new Organic Act, and whether for this reason this court is without original jurisdiction to issue writs of mandamus in cases like the present, in which there is no question of the exercise of its appellate jurisdiction or of its power to compel the inferior courts to comply with the duties imposed upon them by law.

While it is true that section 48 of the Jones Act confers jurisdiction upon the district courts to grant writs of mandamus and is silent as to such jurisdiction in the Supreme

Court, we do not understand that the said section in any way repeals the act of the Insular Legislature of 1903 which granted us that jurisdiction, inasmuch as section 40 provides that the jurisdiction of the courts shall continue to be as now provided until otherwise provided by law. If section 40 did not contain that provision, there is no doubt that our original jurisdiction to issue writs of mandamus would have ceased when the new Organic Act went into effect by virtue of the jurisdiction conferred upon the district courts by its section 48.

We are confirmed in this view by section 57, which provides that the laws of Porto Rico then in force shall continue in force and effect, except as altered, amended, or modified by said Organic Act, by the legislative authority of Porto Rico or by act of Congress of the United States, for in giving original jurisdiction to the district courts in mandamus proceedings section 48 only confirmed the jurisdiction already conferred upon them by the Insular Legislature in 1903 and cannot be interpreted as repealing the legislative act, for it neither amended, altered, nor modified it.

Before considering the allegation of the respondent that in the particular case before us this court has no original jurisdiction to issue writs of mandamus, it is necessary to recount the material facts set up in the petition.

The municipality of Quebradillas petitioned for a writ of mandamus directed to the Executive Secretary of Porto Rico, alleging that it is organized according to the Municipalities Act of 1906; that on August 13, 1917, the Legislature of Porto Rico convened in its first regular session under the present Organic Act; that on September 12, 1917, the Legislature being in session, a bill, which is copied into the petition, was introduced providing that upon its approval as a law The People of Porto Rico should take control of an artesian well which supplies water to the town of Quebradillas; that the said bill was passed by a majority yea-and-nay vote of the members of both the House of Representatives

and the Senate and was signed by the Speaker of the House and the President of the Senate on November 25, 1917; that the said bill was received by the Governor of Porto Rico for his consideration on November 25, 1917; that on the next day, November 26, the House and the Senate, by mutual and express consent, temporarily adjourned until February 4, 1918; that the Governor of Porto Rico did not return the said bill within the ten days (Sundays excluded) following its receipt by him; that the Legislature did not adjourn *sine die* during the said ten days nor until February 6, 1918; that said bill became a law because it was not returned approved or vetoed by the Governor within ten days after its receipt, the Legislature not having adjourned *sine die* during that time; that although section 22 of the Organic Act requires the Executive Secretary to promulgate all laws enacted by the Legislature, he has refused to promulgate the said law, although he has been requested to do so, answering that it was not approved by the Governor and that, complying with his instructions, he had not and would not promulgate it unless the courts should decide that it is a law on the ground that the Legislature did not adjourn its regular session on November 26, 1917, but simply took a recess until the first Monday in February. The petitioner alleged also that the temporary adjournment of the Legislature was an act authorized by law and that it has no other adequate, speedy and effective remedy in the ordinary course of law than that resorted to; wherefore it prayed this court to command the Executive Secretary of Porto Rico to promulgate and publish the said act officially.

In view of these allegations the respondent contends that this court has no jurisdiction to issue a writ of mandamus in this case because it would have the effect of determining the legality of the sessions of the Legislature. He cites some paragraphs from the case of *Clough* v. *Curtis*, 134 U. S. 361, as his only argument in support of this contention.

We have examined that case and find that it does not

sustain the contention of the respondent.  According to the opinion of the court, delivered by Mr. Justice Harlan, the Speaker of the House of Representatives and the President of the Council, these two bodies constituting the Legislative Assembly of Idaho in the year 1899, each presented a separate petition to the Supreme Court of that Territory alleging that the Legislative Assembly adjourned *sine die* on February 7 of that year, for the reason that the sixty days to which the session was limited expired at midnight, and that after that hour some of the members of these bodies elected a speaker and president *pro tem.* and passed various acts.  They alleged, furthermore, that the clerks of the said bodies had not furnished the Executive Secretary with a true account of what was done at such sessions and prayed that the Executive Secretary be commanded to correct the record so as to make it a true record of the proceedings which could be certified to the Congress of the United States.  The Supreme Court of Idaho refused to issue the writs and when the cases were brought up to the Supreme Court of the United States on appeal it considered the appeals of the speaker and the president together and affirmed the judgments appealed from on the ground, among others, that in cases involving no private interests the jurisdiction of the court could not be invoked to determine whether certain legislative bodies which assume to exercise legislative functions constitute a lawful legislative assembly, that being a question which might be raised in a suit based on some act passed by the said assembly.

The case now being considered is one which falls within the indication of the Supreme Court of the United States in that decision, for the petitioner asserts a right accruing to it under an act which provides that The People of Porto Rico shall bear the expenses of the artesian well of Quebradillas, and this gives the petitioning municipality a cause of action for the reason that if the said bill has become a law it would be benefited thereby because it would not have

to be burdened with the expenses of the well. The evidence at the trial showed that the upkeep of the well actually cost the said municipality a sum of money yearly.

As to the other argument of the respondent, that we are without jurisdiction because according to Supreme Court Rule 69 the petition must set forth the reasons which render it indispensable that the writ should issue originally from this court, and that our jurisprudence supports his contention, we will say that failure to set forth these reasons does not deprive this court of jurisdiction, but they are required to be given in order that we may avoid taking jurisdiction of unimportant cases. However, as in this case it appeared from the petition itself that the writ was to be directed to a high public official of the Government of Porto Rico and involved the determination of a question so important as the legality of the adjournment of the Legislature for a long period of time, we considered it expedient to issue the writ directly.

The respondent also demurred to the petition, alleging that the petitioner is without legal capacity to maintain the proceeding; that the petition sets up no facts to show that the petitioner has an interest in the matter, and that the petitioner has another remedy in the ordinary course of law.

These three objections are argued jointly by the respondent and we will consider them in that manner.

In support of that argument he cites without comment the dissenting opinion of Mr. Justice Temple in the case of *Hardpending v. Haight,* 39 Cal. 216. In that case the petition for a writ of mandamus was presented to the supreme court by an agreement of the parties, and it was alleged, among other things, that as the petitioner had an interest in the result of the proceeding, he was a proper party thereto. The purpose of the proceeding was to determine whether a bill passed by the legislative assembly had become a law because of the failure of the Governor to return it to the Senate within ten days (Sundays excepted), the parties

having stipulated also that if this were the case a peremptory writ should issue commanding the respondent to attest the said act in the manner provided by the law governing the attestation of acts not approved by the Governor.  The supreme court granted the peremptory writ of mandamus, Mr. Justice Temple alone dissenting.  In the majority opinion of the court it was not considered whether the petitioner had an interest in the matter.  It appears that it discarded that question because of the stipulation of the parties.  Only the dissenting justice considered it and arrived at the conclusion that the petitioner had another simple, speedy, effective and adequate remedy because, the purpose of his petition being to procure the creation of an official record of the action of the Executive regarding the act in controversy, he could have accomplished this in a direct proceeding under the said act, considering and acting upon it as a law, and that he had no interest in the matter notwithstanding the stipulation to the contrary, for, the act being a measure for the opening of a public street, he had no right under it to the use of a street which was not yet in existence, although he was the owner of the land upon which the street was to be opened, wherefore his interest was the same as that of any other citizen.

Although it is possible that the petitioner in this case might secure the operation of this law, if in fact it is a law, in another proceeding against the Commissioner of the Interior, whose duty it is to put it in force, inasmuch as the right of the petitioner would be clear and the obligation of the Commissioner of the Interior still clearer, it seems to us that the petitioner would have a perfect right to sue out a writ of mandamus against the said commissioner and would not be bound to resort to an ordinary action, for which reason it is of no great importance whether the mandamus proceeding should be directed against the Commissioner of the Interior or against the Executive Secretary of Porto Rico.  Moreover, as section 22 of the Organic Act prescribes

that the Executive Secretary shall record and preserve the laws enacted by the Legislature and promulgate the same, it seems clear to us that it is a right of any person benefited by a law that such law be recorded and promulgated like the other laws, and that, therefore, he may institute mandamus proceedings against the Executive Secretary of Porto Rico.

Having disposed of the preliminary questions raised by the respondent, we may now proceed to consider the merits of the case, or whether notwithstanding the fact that the bill relating to the artesian well of Quebradillas was not signed by the Governor, it became a law because the Legislature was convened in regular session and he failed to return the bill with his objections to the house of its origin within ten days after he had received it.

As we have seen, the Legislature opened its regular session on August 13, 1917, and with the express and mutual consent of both the House and the Senate, adjourned on November 26, following, until February 4, 1918, under a resolution reading as follows:

"CONCURRENT RESOLUTION

"Adjourning the session of the present Legislature to February 4, 1918.

"WHEREAS, This Legislature has been intensively engaged in the consideration of the many measures brought before it, some of which, being connected with the establishment of the new system of government, are of primary importance; and

"WHEREAS, The Senate and House of Representatives have passed many important bills which required much time and thoughtful consideration and among them, first in line, such financial measures as were indispensable to right the unbalanced condition of our revenues brought about by the prohibition clause of alcoholic beverages enacted by the Congress of the United States for submission to a referendum of the people of Porto Rico, and the adoption of which lessens the receipts of the Treasury in an amount in excess of one million four hundred thousand dollars; and

"WHEREAS, No action has yet been taken on certain measures

introduced at this session of the Legislature, which must be carefully considered by the committees to which they were referred, to the end that they may be enacted into laws in accordance with the requirements of the people; and

"WHEREAS, Our financial situation becomes worse from day to day on account of the war, by reason of which the people at large find it more difficult to earn a living, since it is creating serious social conflicts and maintaining an abnormal situation demanding constant attention from our Legislature so as to correct or prevent, within its powers, existing evils and such others as may come upon us; and

"WHEREAS, For such purposes it is wise to adjourn both houses of the Legislature during such time as may be necessary to consider the aforesaid measures and report thereon; and

"WHEREAS, Pursuant to the provisions of section 34 of the Organic Act in force the two houses of the Legislature may adjourn by common consent for more than three days;

"Now, THEREFORE, *Be it resolved by the Senate and the House of Representatives of Porto Rico:*

"Section 1.—That the House of Representatives and the Senate of Porto Rico adjourn to meet again at ten o'clock in the morning of February 4, 1918.

"Section 2.—That this Resolution shall take effect on the date of its adoption by both houses of the Legislature.

> " (Signed)        JUAN B. HUYKE,
> *"Speaker, House of Representatives.*

> " (Signed)        ANTONIO R. BARCELÓ,
> *"President of the Senate."*

As the petitioner alleges in its petition that such adjournment was an act authorized by law and that because of the failure of the Governor to return the said bill with his objections within ten days after November 25, the date on which it was delivered to him, it became a law without his approval and signature, the respondent by his counsel, the Attorney General of Porto Rico, maintains on the contrary that section 31 of the Organic Act does not affirmatively authorize the Legislature to continue in session indefinitely; that its provisions are restrictive in character and contemplate the termination of the legislative work within ninety

days; that it was not the intention of that section that by an indefinite session the Legislature might nullify other provisions of the same act which allow the Governor, among other things, thirty days in which to consider a bill after it has been submitted to him and gives him the power to make appointments while the Legislature is not in session as well as the right to call special sessions at any time.

The pertinent sections of the act are as follows:

"Section 31.—That members of the Senate and House of Representatives of Porto Rico shall receive compensation at the rate of $7 per day for the first ninety days of each regular session and $1 per day for each additional day of such session while in session * * *."

"Section 33.—That the first regular session of the Legislature of Porto Rico, provided for by this Act, shall convene on the twenty-eighth day after the first election provided for herein, and regular sessions of the Legislature shall be held bienially thereafter, convening on the second Monday in February of the year nineteen hundred and nineteen, and on the second Monday in February of each second year thereafter. The Governor may call special sessions of the Legislature or of the Senate at any time when in his opinion the public interest may require it, but no special session shall continue longer than ten days, not including Sundays and holidays, and no legislation shall be considered at such session other than that specified in the call, and he shall call the Senate in special session at least once each year on the second Monday in February of those years in which a regular session of the Legislature is not provided for."

It appears clearly from these sections that two kinds of sessions may be held by the Legislature of Porto Rico, the regular session which begins on the day prescribed by the act and the session which convenes at the call of the Governor to attend to matters of public interest, the difference between them as regards the length of the session being that a session called by the Governor must necessarily close within ten days by mandatory provision of the law, while the ordinary, or regular session, which is convened by operation of law, is not limited as to the time of its duration, as

in the case of special sessions, and the time of adjournment is left to the discretion of the Legislature.

Inasmuch as the act fixes no limit for the duration of a regular session, as it does in the case of an extra session, and in this regard prescribes only the compensation which the senators and representatives shall receive during the first ninety days as well as during the additional days of the session, the Congress clearly expresses its intention that the Legislature may continue in regular session for more than ninety days and, hence, that it could adjourn its session to the first Monday in February if it considered such adjournment beneficial to public interests.

But in addition to these reasons which appear from the wording of the act, its history establishes beyond all manner of doubt that it was the intention of the Congress that the regular session might continue more than ninety days.

Section 33 of the original bill provided that no regular session should continue longer than ninety days, not including Sundays, holidays, or days during which both houses might, by concurrent resolution, with the approval of the Governor, have agreed to be in recess. This proviso was subsequently eliminated and the Senate Committee on the Pacific Islands and Porto Rico proposed that section 31 should be amended to read, as it reads in the approved act, that the senators and representatives shall receive compensation at the rate of $7 per day for the first ninety days of each regular session and $1 per day for each additional day of such session, giving as a reason for the amendment that "It is thought that the business of the Legislature can be concluded in 90 days, but instead of establishing a limitation the committee believes that there may arise occasions when a longer session would be necessary, and it is therefore permitted, but the reduction of the per diem, it is expected, will prove a wholesome stimulus to diligent action. Also, the practice sometimes resorted to where the length of a legisla-

tive session is fixed by constitutional limitation, of defeating bills by dilatory tactics, will here be avoided.''

The foregoing shows that although at first the idea was to limit the regular session to only ninety days, this idea was abandoned later, and that in enacting section 31 as it appears in the Organic Act, it was taken into account that the regular session might be necessary for more than ninety days; and although the reduction in the per diem was intended to stimulate the legislators to increased activity, it can in no way be given the scope of limiting the regular session to ninety days.

As the Organic Act authorizes the Governor to call special sessions of the Legislature whenever in his opinion the public interest may require it, the respondent insists that we cannot hold that the regular session of the Legislature may be prolonged indefinitely without defeating that right of the Governor.

It is true that while the Legislature is in regular session the Governor cannot call a special session, but it does not follow from this that we are authorized to fix an arbitrary limitation to the time during which the Legislature may be convened in regular session; for, although the Congress must have had this in mind, it did not see fit to fix a strict limitation to the length of the session, and therefore we cannot reduce or limit it to ninety days. Although section 34 of the act provides that no bill, except the general appropriation bill for the expenses of the Government only, introduced in either house of the Legislature after the first forty days of the session, shall become a law, it does not limit the time which the Legislature may take to consider bills introduced during that period, and we should not assume that if during a long session of the Legislature and after the expiration of its first forty days, matters of such importance should present themselves as to require legislation, the Legislature, safeguarding the public interest, would not adjourn *motu proprio* in order to give the Governor an opportunity to convene a

special session to legislate upon such matters, as it did in this case on February 6.

The respondent alleges also that although the Constitution of Missouri contains a clause similar to our section 31, a question like the one before us has never arisen there because the Legislature of Missouri has never acted under the assumption that it had power to continue in session indefinitely. The case as presented here could never have arisen in Missouri because section 21 of the Constitution of that State expressly provides that any adjournment of the Legislature for more than three days shall have the effect of an adjournment *sine die* and therefore constitute a final closing of the Legislature.

The argument that a long session of the Legislature would defeat the right of the Governor to make recess appointments begs the question at issue and cannot prevail, for while the Legislature is in session such right does exist and the Governor can make appointments. The difference is that inasmuch as all appointments made by the Governor are subject to the approval of the Senate, while the Legislature is in session he must submit them to the Senate for approval as soon as they are made; whereas if the Legislature is not in session, the appointment will have immediate effect until the Legislature meets or the Senate is called in session. The law has done nothing more than to provide a supplementary medium in the interest of public administration for cases when the approval of the appointments cannot be imparted.

The same reasoning is applicable to the other argument to the effect that the Governor would be deprived of his right to employ thirty days in considering a bill after final adjournment of the Legislature, for in reality this right does not exist except when the Legislature has finally adjourned before the expiration of the ten days allowed him for considering the bills which have been submitted to him, this time being then extended because the adjournment of the

Legislature prevents the return of the bill to the house of its origin.

The absolute veto possessed by the Roman tribunes and which the British Constitution bestows upon its sovereign does not exist in the United States of America, for although this power has not been exercised in England for more than a century, it was so abused in the American colonies before their independence that that was one of the causes of the revolution and for that reason was not recognized by the American constitutions except when the Legislature finally adjourns. The American veto is qualified, because within a period of time varying from three, five, six, to ten days after bills are presented to the President or to the governors of the States, according to the different constitutions, these executives must either approve or return them with their objections to the house of their origin in order that they may be reconsidered, under the contingency that if not returned they become laws. This is the wholesome principle of democratic countries, where the absolute veto, popularly known as the ''pocket-veto,'' exists only when by adjourning *sine die* the Congress or the Legislature prevents the President or the governors from returning the bills with their objections for reconsideration.

Therefore, since the duration of the regular sessions of the Legislature of Porto Rico is not limited to a specified number of days, inasmuch as the Legislature is empowered by the Organic Act to recess for more than three days, subject only to the condition that both houses shall agree thereto, and inasmuch as when said Legislature is in session it is the duty of the Governor to return any bill not approved by him to the house of its origin, with a statement of his objections, within ten days after its receipt, the bill otherwise becoming a law without his approval and signature, the real question in this case is whether or not the adjournment agreed to by both houses on November 26, 1917, until the first Monday of the following February prevented the return

by the Governor, with his objections, of the bill in which the municipality of Quebradillas is interested, inasmuch as he failed to approve it; for if it did not prevent such return, the said bill became a law on December 6, 1917.

That it did not prevent the return of the bill is shown by the fact that after the adjournment of the session on November 26, 1917, the Governor returned the following bills and. resolutions which he did not approve, stating his objections: To the Senate: November 27, 1917, bills No. 61 and 129; November 28, No. 1; December 4, No. 162; December 5, No. 30; December 7, joint resolution No. 13 and bill No. 107. To the House of Representatives: November 26, bill No. 34; November 26, bill No. 40; November 27, bill No. 115 and joint resolutions Nos. 5, 24 and 44; December 3, bills Nos. 18 and 157; December 5, No. 303; December 6, Nos. 26 and 37; December 7, Nos. 5, 38, 86, 102, 125, 133, 159, 262, 309, and joint resolution No. 7.

However, we will quote the act.

Section 34, among other things, provides as follows:

"* * * No bill shall become a law until it be passed in each house by a majority yea-and-nay vote of all of the members belonging to such house and entered upon the journal and be approved by the Governor within ten days thereafter. If when a bill that has been passed is presented to the Governor for his signature he approves the same, he shall sign it; or if not, he shall return it, with his objections, to the house in which it originated, which house shall enter his objections at large on its journal and proceed to reconsider it. If, after such reconsideration, two-thirds of all the members of that house shall agree to pass the same it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of all the members of that house it shall be sent to the Governor, who, in case he shall then not approve, shall transmit the same to the President of the United States. The vote of each house shall be by yeas and nays, and the names of the members voting for and against shall be entered on the journal. If the President of the United States approve the same he shall sign it and it shall become a law. If he shall not approve the same he shall return it to the Governor so stating, and it shall not become a

law: *Provided,* That the President of the United States shall approve or disapprove an act submitted to him under the provisions of this section within ninety days from and after its submission for his approval; and if not approved within such time it shall become a law the same as if it had been specifically approved. * * * If any bill shall not be returned by the Governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it, unless the Legislature by adjournment prevents its return, in which case it shall be a law if signed by the Governor within thirty days after receipt by him; otherwise it shall not be a law. * * *."

Considering the question exclusively in the light of the provisions of the act, it seems clear to us that inasmuch as the Legislature may adjourn its session at any time for more than three days to reconvene on another day set by it, such adjournment does not fix a definite period for the regular session nor constitute a final adjournment of the Legislature, for after the expiration of the recess period it can lawfully convéne again in order to continue the same regular session, and therefore it does not prevent the return by the Governor of disapproved bills, because such prevention can occur only when the session has been finally adjourned, for the reason that the Legislature cannot then reconsider the bill. Its return by the Governor is therefore unnecessary and unless it is approved within thirty days the bill dies. But while the Legislature is in session on account of its not having been finally adjourned, no temporary recess prevents the return. To hold the contrary would be equivalent to revoking the provision authorizing an adjournment for more than three days, for any recess, however short it might be, taken while bills were before the Governor for approval, might have the effect of preventing the return of a bill to the house in which it originated when disapproved by the Governor.

It appears from the act itself that the Congress had in mind three kinds of adjournment: (1) One which either house may take of its own accord, not to exceed three days;

(2) a temporary adjournment of both houses for more than three days by mutual consent; and (3) a final adjournment when the Legislature adjourns *sine die.* The first and second do not prevent the reconsideration of a bill which the Governor disapproves; the third does prevent its return, because after final adjournment the Legislature cannot reconsider such bills. It follows from what has been said that only an adjournment *sine die* can prevent the return of a bill, and this is the only kind of adjournment referred to in section 34 of the Organic Act. It does not contemplate the other temporary adjournments or recesses.

The question under consideration has come up repeatedly in the States of the American Union, albeit it has never reached the Supreme Court of the United States, for, as we shall see later, the only case which we have found and which is cited by the respondent, that of *La Abra Silver Mining Co.* v. *United States,* 175 U. S. 423, does not settle that question, but only the question of whether the President can lawfully sign a bill during an adjournment of Congress for more than ten days.

In support of his argument the respondent explains that in accordance with the opinion of United States Attorney General Miller given to the President in the year 1892 (XX Opinions A. G. U. S. 507), and inasmuch as Article I, section 7, clause 2, of the Constitution is similar to our section 34, if the Congress or the Legislature of Porto Rico takes a recess or adjourns for such time as to prevent the President or Governor from returning a bill with his objections to the house in which it originated, within ten days from the date of its receipt, it does not become a law at the expiration of that period.

It is true that it is said in that opinion that a recess shall be considered as an adjournment and that an adjournment for a certain number of days is an adjournment within the meaning of the statutes under consideration, but the opinion does not hold positively that the bill shall not become a law,

albeit it appeared to him that such would be the conclusion. But, notwithstanding these reasonings, it was the opinion of the Attorney General that if it were the practice to return the bills with his objections after ten days, the President should continue the practice, and the Attorney General advised the President to sign or veto the bills, according to whether he considered that they should be approved or not, and return them when Congress reconvened, thus leaving it to the courts to decide the question. As is seen, the Attorney General did not reach the final conclusion attributed to him by the respondent. Besides, that was not the question submitted to him, but the question was whether the President could approve or disapprove bills submitted to him before a recess or temporary adjournment when the adjournment exceeded ten days. On the other hand, the Attorney General points out in his opinion that the question had been otherwise decided in the case of *In re Opinions of Judges,* 45 N. H. 610, and *Hardpending* v. *Haight,* 39 Cal. 206. Hence that opinion does not greatly favor the respondent's contention.

The cases cited throw no light upon the matter under consideration, for the first case cited referred to bills approved by the President within ten days after they were submitted to him when the Congress had adjourned for more than ten days, and the Supreme Court of the United States expressly stated therein that it only disposed of the question of whether the President could sign the bills under such circumstances. On the other hand, we might say that if he could sign them it was because the Congress was in recess and had not finally adjourned, because Mr. Justice Harlan did not regard such recess as a final adjournment, since he says on page 455:

"Whether the President can sign a bill after the final adjournment of Congress for the session, is a question not arising in this case, and has not been considered or decided by us. We adjudge— and touching this branch of the case adjudge nothing more—that

the act of 1892 having been presented to the President while Congress was sitting and having been signed by him when Congress was in recess for a specified time, but within ten days, Sundays excepted, after it was so presented to him, was effectively approved, and immediately became a law, unless its provisions are repugnant to the Constitution.''

As is seen, an adjournment for several days is called a recess, thus distinguishing it from a final adjournment.

These cases are cited to show that the validity of the said acts would not have been so extensively discussed, nor would the courts have held that an act approved by the President during an adjournment of Congress for more than ten days was valid, if the attorney for the Government and the courts had been of the opinion that the bills had become laws without the signature of the President by reason of his not having returned them within ten days, and the case of *People* v. *Kaiser,* 135 N. Y. Supp. 274, 206 N. Y. 40, 150 App. Div. Rep. 541, is mentioned in support of this reasoning.

However, as the President signed the bill the question that necessarily arose from this fact was whether he could validly do so during an adjournment of Congress for more than ten days and not whether the bill became a law because the President did not return it within ten days, for while it is true that he did not return it, it is also a fact that it did not remain unsigned by him, and therefore the effect of failure on his part to sign and return it was not a subject for consideration.

The respondent also maintains that a New Jersey case, decided in the year 1912, *In re An Act to amend an act entitled "An Act concerning public utilities,"* 84 Atl. 706, is squarely in point with the present case because it holds that a bill presented to the Governor before a recess of the Legislature does not become a law unless approved by the Governor.

That judgment is based principally on the ground that the word adjournment employed in the act does not mean

an adjournment *sine die,* but any adjournment, because no distinction is drawn in the Constitution. However, we have seen that in the case of *La Abra, supra,* the Supreme Court distinguishes between those two kinds of adjournment and that, in fact, the act makes such a distinction, for it permits an adjournment for a specified period of time by mutual agreement of the houses if the adjournment is for more than three days to reconvene later in the same regular session; and such adjournment is distinct from a final adjournment because in the latter case the Legislature does not reconvene. And although it is contended also in the case referred to that during an adjournment for several days the Governor has no opportunity to return the bills to the house of their origin because they cannot be delivered to any officer of the house, yet, as we shall see later, the weight of authority is that this may be done. Besides, in that case the Governor returned the bill with his objections to the house of its origin after the Legislature had again convened and it was approved by that house, but the other house failed to approve it. This, in fact, was the real question before the court. After all, that judgment has no greater sanction than that of the justices who heard the case, for there were no citations of any other decisions although at that time many had been rendered holding the contrary.

The other case of *State* v. *Town of South Norwalk,* 58 Atl. 759, decided in Connecticut in the year 1904, is identical, although it appears to admit that the Governor could return the bill when the Legislature resumed its session. The observations made upon the other case are also applicable to it, including the reference to its being unsupported, for it cites no jurisprudence of other courts or acceptable authorities.

The last citation made by the respondent is the case of *People* v. *Hatch,* 33 Ill. 135, but the facts in that case differ from the facts here. Although about the year 1863 the Constitution also provided that the Governor should return

disapproved bills with his objections within a period of ten days and that if he failed to do so the bills should become laws as though he had signed them, unless the Legislature by adjournment prevented their return, nevertheless, when the bill referred to in the judgment was delivered to the Governor on June 12, 1863, the session which began in January of that year had been finally adjourned because the Governor prorogued it two days earlier, or on June 10, 1863, on account of a disagreement between the two houses with respect to the date of final adjournment; for while the Senate proposed that it should adjourn on June 8, the House of Representatives wished to continue in session until June 22, and the Senate would not agree to this. In these circumstances the Governor exercised the authority conferred upon him by the Constitution and prorogued the Legislature until January, 1865. His mandate was obeyed by the presiding officers and by a majority of the members of the Senate, who retired from the statehouse, settled their accounts with the auditor and returned to their homes, but a very small number of the members spread upon the journal a vigorous protest against the Governor's action and not more than four or six of them met again until June 23. On June 24 they agreed to adjourn until January, 1864. The adjournment in that case was inevitably final on June 10, therefore the bill presented to the Governor two days later could not become a law without his signature. Moreover, the holdings of the justices in their opinion in that case as to whether the Governor could return the bills which he did not approve to the other Legislature in organized session during the entire period of the ten days, and whether he was not required to return them to the speaker of the house or to one of its employees, are contrary to all subsequent jurisprudence, which is abundant, and also to the only case which had been decided up to that time—that is, *In re Opinions of the Judges,* 3 Mass. 567, decided in 1791.

In support of the contrary theory, which is that adopted

by this court, may be cited not only the oldest Massachusetts case just mentioned, but also the cases of *In re Opinions of the Judges,* 45 N. H. 610 (1864); *Hardpending* v. *Haight,* 39 Cal. 189 (1870); *Miller* v. *Hurford,* 9 N. W. 475 (Neb. 1871); *Hequembourg* v. *City of Dunkirk,* 2 N. Y. Supp. 447, 49 Hun, 557 (1888); *State ex rel. State Pharmaceutical Assn.* v. *Michel,* 52 La. Ann. 936, 49 L. R. A. 224 (1900), and especially the case of *Johnson City* v. *Tennessee East. Elec. Co.* 182 S. W. 587, the most recently published case, being of the year 1916. In this last case not only are all of these other cases cited as supporting its conclusions, but it also reviews and refutes the reasonings in the cases of *People* v. *Hatch* (Ill.) and *State* v. *Norwalk* (Conn.), *supra.* In the 1791 case first above cited the justices of the Supreme Court, answering a question submitted by the Senate, which was allowed there, held that if a bill or resolution was presented to the Governor for his approval within less than five days before any recess and he did not return it with his objections, it became a law because the session was considered to include all the days although there may have been an adjournment.

Although the respondent contends that that opinion is based on a constitutional provision unlike our own, we do not agree with him, for there the law also provides that if the Governor does not return the bills within five days after they are submitted to him they shall become laws.

The next case, that of the year 1864, was also an opinion rendered by the justice of New Hampshire, where the constitutional provision, like our own, is that if the Governor does not return the bills with his objections to the house of their origin within five days (Sundays excluded) after they shall have been submitted to him they shall become laws as though he had signed them, unless the Legislature by adjournment prevents their return, in which case they shall not become laws. It was there held that the last of the five days in which neither of the legislative bodies was in session should be counted as one of the five days specified and that

the adjournment mentioned in the Constitution of New Hampshire did not refer to a recess or ordinary adjournment from time to time during the session, but to a final adjournment at the close of the session.

We have not been able to find the volume containing a report of this case, but it is cited as we have transcribed it in XX Opinions A. G. U. S. 504. Reference is also made to it in 36 Cyc. 962, note 53, as holding that the return may be made by leaving the bill on the desk of the speaker of the house.

The objection made to this case by the Attorney General is that undoubtedly the bill should have been returned on the twenty-third because the twenty-first fell on Sunday, and that the Legislature was in session on the twenty-third. However, according to the citation of this case in *Hardpending* v. *Haight,* 39 Cal. 204, the bill should have been returned on Monday the twenty-second, on which day the House of Representatives was not in session, and this destroys the objection.

The next case to be considered is that of *Hardpending, supra,* which presents and disposes of the questions now before us in this proceeding and which has been cited with approval in the other cases decided subsequently.

The facts in that case were as follows: Since March 1, 1870, the Legislature had taken no recess. On March 19 the bill whose validity was questioned was presented to the Governor. At 4 P. M. of the thirty-first of the said month of March the Senate adjourned until 11:30 A. M. of the following day. Half an hour after that adjournment, or at 4:30 P. M., the Governor's secretary took the bill with the Governor's objections to the Senate and finding that it had adjourned, returned the bill to the Governor, who kept it and notified the Senate on April first that the bill had not become a law because he had been prevented from returning it.

We quote the following from page 203:

"The Senate has the unqualified, constitutional power to adjourn for three consecutive days. (Art. IV, Sec. 15, Constitution.) It must often happen that these three days will include the last day allowed the Executive for the exercise of the veto power against the passage of a particular Senate bill.

"Now, if the mere fact of the recess of the Senate, thus constitutionally taken, does operate to defeat, in a measure, the exercise of the veto power conferred on the Executive by the Constitution, then we have the strange spectacle of an irreconcilable conflict between the several clauses of that instrument itself, by which the Senate, by the mere exercise of its own admitted constitutional authority to adjourn, violates the equally clear constitutional right of the Executive to have it kept in session.

"We are of the opinion that the adjournment of the Senate on March 31st did not curtail the veto power of the Executive over the bill in question, nor should it even have embarrassed him in its exercise. The return should have been made in such manner as the circumstances would permit; it should, at all events, have left the bill and message beyond the Executive control, and, if need be, in the immediate custody of some proper person who would be likely to, deliver it to the Senate at the first opportunity. The best return that the circumstances would admit, would in our judgment, be a proper return. The maxim *lex non cogit ad impossibilia* would be applicable to such a condition of affairs."

The opinion then refers to the New Hampshire case *supra* and on page 205 says:

"If it (the Senate) has adjourned for the day, or for three days, it still has an organized existence as a legislative body, with its president, secretary and other officers, to whom, under such circumstances, a substitutional delivery of the bill and message might be made, and whose official duty it would be to place the bill and message before the Senate at as early a time as might be thereafter. Such a return, as we have said, would be the only one permitted by the circumstances; and when the bill should afterwards actually reach the Senate, it would then proceed to reconsider it, as required by the Constitution in that respect.

. . . "But when a final adjournment of the Legislature has occurred, there is an end to the organized existence of the Senate. It has no longer officers to represent it for any purpose; nor could the bill, in the nature of things, ever be brought to its attention, for it would

not be in session thereafter, nor be reconsidered by it, which is the purpose to be attained, for it would be itself no longer existing.''

After stating that the Constitution of the United States is like that of California (and our own) on that point, the opinion continues on page 206:

"It seems to have been the opinion of the late Mr. Justice Story (Com. on the Constitution, Section 891), that the only adjournment which could prevent the Federal Executive from returning a bill within the time prescribed, must be an adjournment amounting to 'a termination of the session.'"

While it is true, as claimed by the respondent, that there was no adjournment in that case like the one involved in these proceedings, the question, nevertheless, is the same because the California court did not limit itself to a consideration of the adjournment taken there from day to day, but reviewed the question of an adjournment for three days, the same principles being applicable to an adjournment for a greater number of days, inasmuch as such an adjournment may be constitutionally taken by the mutual consent of the two houses of the Legislature of Porto Rico.

Then follows in order of date the case of *Miller* v. *Hurford,* 9 N. W. 475, in which the Legislature adjourned for sixty-two days, or from March 29 to May 30, 1891, before the expiration of the three days allowed the Governor for the return with his objections of the bills which he disapproved. The Governor kept the bill until June 6, or three days after the Legislature had reconvened. The bill having been certified by the presiding officers of both houses, the question of its validity came up later, it being alleged that the Senate and the House of Representatives had adjourned before the expiration of the three days allowed the Governor for approving it after its presentation. The court held that the constitutional provision applied to an adjournment *sine die* and not to adjournments from time to time.

As regards this case, it seems that it was decided on the

ground stated and not because the Governor kept the bill until June 6, or for more than three days while the Legislature was in session. Like the cases cited by the respondent, it makes no reference to other decisions.

Then follows the case of *Hequembourg* v. *City of Dunkirk*, 2 N. Y. Supp. 447, of New York, whose constitution is like ours on the point under consideration, and provides that when the Legislature adjourns the Governor shall have thirty days in which to approve the bills that may be submitted to him.

According to the opinion in that case, the bill was presented to the Governor on February 10, 1899, and on the seventh (*sic*) of said month, while the bill was in his hands, the Legislature adjourned until February 28. The Governor did not approve it and filed it in the secretary's office ten days later. It was maintained that the bill did not become a law because the adjournment prevented the return of the bill to the Legislature within ten days after its receipt by the Governor. Therefore, it was established as a basis that the question to be decided was whether the adjournment taken by the Legislature prevented the return of the bill, and on that basis it was held that the case was identical with the *Soldiers Voting Bill* case (45 N. H. 607), in which it was held that the adjournment referred to in the Constitution was not an ordinary recess taken from time to time during the session, but a final adjournment which closes the session. And it is added that the case cited was followed by the Attorney General in his opinion regarding the act to change the title of the Bankers' Life Insurance and Trust Company which appears in the Session Laws of 1881 (Chap. 707, p. 242).

Although the respondent attempts to draw a distinction between that case and the case under consideration on the ground that there the Governor had an opportunity to return the bill after the adjournment during more than four days after the recess, we fail to see how the cases can be

distinguished, inasmuch as the Governor here had the same opportunity as the Governor of New York.

In the other case of *State ex rel. State Pharmaceutical Assn. v. Michel,* 49 L. R. A. 224, decided in Louisiana in 1900, it is also held, citing the New Hampshire case, that adjournment means final adjournment for the purposes of return and not an adjournment for one day or for several days.

The most important case is that of *Johnson City v. Tennessee East. Elec. Co.* 182 S. W. 587, because it was decided only three years ago and because the court reviews the cases supporting its opinion and refutes by strong argument the Illinois and Connecticut cases.

As regards the point under consideration, the Constitution of Tennessee is like our own, except that the time for returning bills is five days instead of ten, as prescribed by the Jones Act, and that after adjournment the Governor is not allowed thirty days for approving bills as he is by our Organic Act. Under such conditions the bill was presented to the Governor on April 1, 1915. On April 3 the Legislature adjourned until May 3 following. On May 4, or the day after reconvening the session, the Governor returned the bill with his objections, but the house did not reconsider it. It was in the hands of the Governor during thirty days.

After reciting these facts the court asks what is the meaning of adjournment, in the sense of preventing the return of bills by the Governor, and states that there are two rival contentions on this point; first, that of the appellant, that under the Constitution of 1870 the return of a bill by the Governor with his objections in writing, as is required if he refuse to sign it, must be made to the house in which the bill originated while there is present in that house a quorum of its members competent to reconsider the bill or perform other duties; second, that of the appellee that such return may be made to any officer, agent or employee of the house whose duty it is, within the meaning of the Constitution, to deliver to the house for its reconsideration the returned bill

and the objections of the Governor, whether or not there is present a quorum of the members of the house when the bill, with the objections of the Governor, is delivered to the officer, agent or employee of the house. And after quoting section 18, article 3, of that Constitution, the court, on page 589, said:

"It is manifest from a reading of the foregoing section that if the insistence of the appellant be the true postulate from which we should proceed, that is to say, if the return must be made to the house when a quorum of its membership is present, then the meaning of the phrase in the above section, 'unless the General Assembly by its adjournment prevents its return' is that any adjournment which would result in the absence of a quorum would be such an adjournment as would prevent the return of the bill, and therefore it would result that the Governor could not return a bill during adjournment if the house in which it originated had adjourned for midday luncheon, or had adjourned at night until the following morning, or had adjourned for any longer period of time, or had finally adjourned.

"If we should adopt the above conclusion it would necessarily result in a holding that the time during which the house in which the bill originated was temporarily adjourned could not be counted against the time limiting the Governor's right or power to return the bill with his objections to five days from the time it was presented to him, and therefore in order that the Governor might at times be advised of the amount of time within which the power was still in him to so act in respect of any particular bill, it would be necessary that he be informed of the length of each adjournment, and that he add the space of each to the five days' time referred to above. We think such a construction would result in many evils and abuses, and that it is not the one intended by the framers of section 18 of article 3.

"The sound insistence is the one made by the appellee. 'Adjournment,' as used in the phrase above quoted from the Constitution, means final adjournment."

On page 590 the court says:

"Furthermore, we think such a return might properly be made within the meaning of the Constitution to the clerk of the house in which the bill originated. He would be chargeable by reason of his

office or employment with the duty of informing the house, when a quorum was present, of the fact that the Governor had returned the bill with his objections thereto."

And on the same page the court continues:

"A session of the General Assembly is an entirety within the meaning of our Constitution. If it be a regular session its beginning is fixed by the Constitution, section 8, article 2, and the session terminates when both Houses composing it shall have adjourned *sine die.*"

The reasonings in that case are very comprehensive and for that reason we shall not quote the whole opinion, but will limit ourselves to stating that after citing from Lewis' Sutherland on Statutory Construction (2d ed.) in support of the doctrine laid down, and after citing the cases which support its opinion, the cases which we have already reviewed, the court goes on to controvert the two leading opposing cases, as follows (p. 591):

"It is insisted for appellant, however, that there is a conflict of authority in the American courts. The conflict is very slight, if it may be said to exist. The first opposing case relied on is *People* v. *Hatch,* 33 Ill. 135. The text of the Illinois Constitution construed by the court in that case was substantially the same as our own with one very material exception; for after the words, 'unless the General Assembly shall by their adjournment prevent its return,' the section construed in the Illinois Constitution concluded as follows:

" 'In which case the said bill shall be returned at the first day of the meeting of the General Assembly, after the expiration of the said ten days.' Const. Ill. 1848, art. 4, sec. 21.

"This last-quoted clause is not in our Constitution. If it were we could very well reach the same conclusion at which the Illinois court arrived (without, however, adopting all of its reasoning), for it is manifest that the last-quoted clause unerringly indicated the intent of the Illinois Constitution to be that the return of the bill should only be made to the house in open meeting. There was a clearly implied grant to the Governor of such additional time in which to make the return as might elapse between the expiration of the ten days expressly granted and the first day of the meeting of the General

Assembly thereafter. The intent of the Illinois Constitution clearly was that a temporary adjournment of the house should relieve the Governor of the duty of making the return during such adjournment; while under our Constitution no such intent can be discerned, but a contrary one, as we think, clearly appears. Some of the reasoning of the Illinois court is in conflict with the views we entertain, and with those entertained by the other courts above cited. But it is manifest that the conclusion reached by the Illinois court must be rested upon the peculiar provision of its Constitution above set out. The next case relied on by the appellant is *State* v. *South Norwalk*, 77 Conn. 257, 58 Atl. 759. That case was decided in 1904, and while it construed a section of the Connecticut Constitution similar in substance to our section 18 of article 3, and held that a mere temporary adjournment of the Legislature would, within the intent of the Connecticut Constitution, prevent the return of a bill by the Governor with his objections to the house in which it originated; yet when examined the decision seems to be rested on a practical construction of the Constitution of Connecticut made by the Legislature and chief executives of the state and acted upon by these two departments of the government from the year 1819 down to the time of the decision of the case in 1904. Thus it appears that this practical construction of the Connecticut Constitution by two departments of the state government had continued for a period of 85 years, as the opinion recites, 'since the creation of the office of executive secretary in 1819 the invariable practice in returning a bill has been to return it by his hand for delivery in open house to the proper officer.' Now the Constitution construed in that case was adopted in 1818, so that the construction which was sustained by the opinion had been placed upon the Constitution practically during the entire period of its existence. The opinion, though rendered long after the establishment of a unanimous current of authority contrary to some of the reasoning contained in the opinion, fails to notice any of the cases holding the opposing view. With the exception of such support as appellant's position may have in the reasoning of the two cases last-above mentioned, we have been unable to find any support for it in any of the adjudicated cases which we have examined. There is, however, to be found, at section 64, volume 1, Lewis' Sutherland, Statutory Construction, a text apparently supporting appellant's view, but to sustain this text the author cites *People* v. *Hatch*, 33 Ill. 135, which we have discussed *supra.*"

To what we have already said there remains to be added that our former Organic Act contained a provision similar to that now in force respecting the duty of the Governor to return disapproved bills to the house in which they originated within ten days, and that in 1902 the Legislative Assembly of Porto Rico enacted in section 39 of the Political Code that if, on the day the Governor desires to return a bill without his approval, and with his objections thereto, to the house in which it originated, that house has adjourned for the day (but not for the session), he may deliver the bill with his message to the presiding officer, secretary or clerk, and if neither can be found upon reasonable search, then to any member of such house, and such delivery is as effectual as though returned in open session, if the Governor, on the first day the house is again in session, by message, notifies it of such delivery, and of the time when, and the person to whom, such delivery was made.

This statute does not attempt to put a legislative construction on the act of Congress in regard to an adjournment which prevents the return of a bill by the Governor, nor to limit the veto power after the Legislature has finally adjourned, for its provisions refer only to cases of recesses or temporary adjournments and not to a final adjournment *sine die*.

Although that statute was enacted before the Jones Act went into effect, it is still in force because on that point the present Organic Act is like its predecessor and because section 57 of the Jones Act provides that the laws and ordinances of Porto Rico then in force shall continue in force and effect, except as altered, amended, or modified by the new act, by legislative authority therein provided for Porto Rico, or by act of Congress of the United States, and as section 39 of the Political Code is not in conflict with any provision of the new Organic Act, we are of the opinion that it is applicable.

For the foregoing reasons we think that the peremptory

writ of mandamus should issue as prayed for by the petitioner.

*Writ granted.*

Chief Justice Hernández and Justice del Toro concurred.
Mr. Justice Hutchison concurred in the judgment.
Mr. Justice Wolf dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF.

The bill in this case was presented to the Governor on November 25, 1917. The Legislature adjourned on November 26, 1917, to meet again on February 4, 1918. The Governor neither approved the bill nor returned it with his objections and the petitioner maintains that it became a law.

The essential words to be considered, taken from section 34 of the Organic Act of Porto Rico, are as follows:

"If when a bill that has been passed is presented to the Governor for his signature he approves the same, he shall sign it; or if not, he shall return it, with his objections, to the house in which it originated, which house shall enter his objections at large on its journal and proceed to reconsider it. * * * If any bill shall not be returned by the Governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it, unless the Legislature by adjournment prevents its return, in which case it shall be a law if signed by the Governor within thirty days after receipt by him; otherwise it shall not be a law. * * * * "

When, then, the defense is that a certain bill did not become a law, the problem is when and how does an adjournment prevent a return, and the first inquiry is when and how is a return to the particular house made. If the Governor wishes to return a bill, with his objections, he must do so within ten days (Sundays excepted) after its presentation to him. If he wishes to take the whole ten days to consider the bill and then still desires to return it with his objections, the duty is to return it on the last day allowed him. If on this last day the particular house in which the bill

originated is not in session, is the return prevented on that day? As I read the language of the statute or of the Constitution of the United States and from such historic data as I have been able to find, I think the return for that last day is clearly prevented. In other words, that the return must be made to the house in which the bill originated when that house is in actual open session.

Taking the phrase "the house in which it originated," the words "the house" are not limited to a building or an edifice, but mean necessarily the members composing the house and at their regular meeting place. "Neither house shall * * * adjourn for more than three days, nor to any other place than that in which the two houses shall be sitting." (Excerpt from section 34 under consideration.) The clause contemplates the membership of that house and that membership only takes on tangible, visible form when it is assembled in its regular meeting place. Another excerpt from section 34 is that "No bill shall become a law until it be passed in each house by a majority yea-and-nay vote of all the members belonging to such house." The house is composed of its members and their assembly is presupposed. Other places where the word "house" is used in the Organic Act and in section 34 point to the same meaning of the word.

The New Jersey Supreme Court said so in *Ex rel. Werts* v. *Rogers,* 23 L. R. A. 377, and a similar holding is to be found in Opinions Rendered to the Governor in 12 Fla. 673. This evidently was the opinion of the Supreme Court of Illinois in *People* v. *Hatch,* 33 Ill. 154 *et seq.* Strongly to the same effect are *State* v. *Joseph,* 57 So. 944, and *State* v. *Town of South Norwalk,* 58 Atl. 760. Each of these cases held that a return to an officer of a house is an abnormality in parliamentary law. I think this is the plain inference to be drawn from the original meaning of the words "the house" derived from any of the decisions cited to us pro and con in the brief of the Attorney General on the principal question of whether the bill before us became a law.

"Which house shall enter its objections at large on its journal." That there can be no journal for a non-legislative day seems so clear that it needs very few citations of authority, but a reference may be had to the following: *Field* v. *Clark*, 143 U. S. 671; *People* v. *Hatch*, 33 Ill. 156 *et seq.* *People* v. *Leddy*, 123 Pac. 827, with its citations of cases, and of Cushing's Law and Practice of Legislative Assemblies, pars. 417, 422–23; *Montgomery Beer Bottling Works* v. *Gaston*, 51 L. R. A. 400, 411; *Rash* v. *Allen*, 76 Atl. 370, 384; *Oakland Paving Co.* v. *Hilton*, 69 Cal. 479. *State ex rel.* v. *Wheeler*, 172 Ind. 588, decided that there could be no proof of a veto except the journal. The only place of record provided by the Constitution of the United States or the Organic Act of Porto Rico is the journal of the house to which a bill is to be returned. The journal, although in legislative practice it may be made up after the adjournment of a day, relates to a legislative day. When the Legislature or the particular house adjourns over a day there can be no return for that day.

In *In re Opinions of the Judges*, 3 Mass. 567, and in *Miller* v. *Hurford*, 9 N. W. 477, cited in the majority opinion as sustaining its conclusion, each of the said courts accepted the fact that there could be no return on a non-legislative day and met the question by deciding that the Governor had the specified number of legislative days in which to make his return. In other words, while intermediate recesses or adjournments did not prevent the return, such return must be made on a subsequent legislative day. The constitution of Alabama, as shown by the case of *State* v. *Joseph, supra,* requires a return to be made at a subsequent session.

While the construction to be placed on the Organic Act and on the Constitution of the United States almost necessarily means calendar days by reason of the required return within ten days (Sundays excepted), yet it is to be noted that if Massachusetts and Nebraska should be followed, the bill before us would fail because the Governor did not have ten

legislative days within which to return the bill. The said bill was sent to him on November 25. The Legislature adjourned on November 26, met again on February 4 and adjourned *sine die* on February 6. The Governor had possibly four legislative days for the return of the bill.

In *Hardpending* v. *Haight,* 39 Cal. 189, which is a carefully considered case and cited to support the conclusion in the majority opinion, the reasoning on page 199 *et seq.* shows that the court was of the opinion that the return should be made to an open session, normally within the ten days if possible, but otherwise by leaving it with somebody for subsequent effective return. The court there, after showing that the return must be as solemn as the presentment, held that there was no return. It was the particular circumstances of that case, which we shall discuss hereafter, which made the court say that a momentary adjournment of the particular house did not prevent the return of the bill.

The reasoning of the court in *In re Opinion of the Justices* in 45 N. H. 610, and in *Hequembourg* v. *City of Dunkirk,* 2 N. Y. Supp. 447, 49 Hun, 550, are some of the exceptions made that point to the rule. The very words of section 39 of our Political Code, taken probably from California or Idaho, show that, normally, the return must be made to an open session. A return as therein specified, the Legislature says, shall be equivalent to a "Return in open session." Perhaps nothing shows more clearly traditionally the manner of a return and the interpretation of the particular words.

The use of the word "adjournment" itself necessarily means that the body to which it refers has temporarily or permanently ceased acting and that no return can be made to such body at least until said body meets again and that the Legislature, to which the words are applied, has no active existence.

As the Attorney General points out, the word "adjournment" is used in section 34 of the Organic Act in four places. There is nothing in the act itself to indicate that the Con-

stitution makers or Congress understood more than one thing by the use of the word ''adjournment.'' There is no authority in the Organic Act or in the Constitution in the use of the word ''adjournment'' to distinguish it from a ''recess.'' In section 26 when the Congress intended to refer to a final adjournment it said so in so many words.

If a return may be made to the officers of a particular house, then the return may just as well be made at any time, as Mr. Fay pointed out in his brief in *United States* v. *Weil*, 29 Ct. of Claims, 525. He said that it was very clear from the language of the Constitution that if the President could return a bill to an officer of the house and its delivery to such officer would be a sufficient return, the clause in the Constitution with respect to an adjournment of Congress preventing its return would be utterly futile; for if it could be returned to an officer of the house, an adjournment of Congress could never prevent its return. There is always an officer of the house, he argued, and hence the clause of the Constitution would be meaningless. Further and more elaborate reasoning is to be found in *State* v. *Joseph*, 57 So. 942, and *State* v. *Town of South Norwalk*, 58 Atl. 760. It seems clear to my mind from reasoning and authority that a return according to the Constitution must be made to an open session, and that any adjournment prevents such a return for the time being, at least, or until the particular house meets again. In *State v. Joseph, supra,* it was stated that there can be no transmission from one house to the other while either is not in session.

As, however, there is no authority for a return after the ten days (Sundays excepted), an adjournment over the last day allowed the Governor prevents the return. This, plainly, was the opinion of Mr. Justice Nott in *United States* v. *Weil, supra.*

In Volume XX, Opinions A. G. U. S., Attorney General Miller said:

"In other words, within the meaning of the Constitution, a recess is held to be an adjournment. As an original question I should say that the dispersion of the two houses of Congress for a definite period, in pursuance of a joint resolution, such as that under consideration, is an adjournment within the meaning of subdivision 2, section 7 of Article I of the Constitution. If a different rule were to be applied to an adjournment of ten days it might be applied to an adjournment for as many months. Suppose Congress having met on the first of December were, on the first of February, to adjourn until the first of October. What would become of a bill presented to the President and not approved within ten days? It could hardly remain in a state of suspended animation until Congress should reconvene. The President could not veto it in the manner provided in the Constitution; and, this being so, it would appear to follow that if not signed it must fail to become a law."

The Attorney General had analyzed the Massachusetts, New Hampshire and California cases and was of the opinion that the adjournment of Congress prevented a return. It is true that, to be on the safe side, he advised the President to oppose or return the bill, but that did not deteriorate from the force or the solemnity of his opinion. The Harrison administration, during which the opinion was given, was noted for its careful judicial appointments, and the President himself was a very able lawyer, so that the opinion of his Attorney General given at that time is entitled to considerable weight.

In addition to these two expressions of the Federal attitude toward this particular provision of the Constitution, we have the fact, as pointed out by the Attorney General, that in *La Abra Silver Mining Co.* v. *United States,* 175 U. S. 423, the governmental officers were contending that the bill in question there had become a law, and yet in no part of their argument did they rely upon the theory that the bill had become a law by reason of the President's not having returned it within ten days. They relied entirely on the fact of his approval without the ten days.

Similar reasoning as to an executive construction is to

be found in the case of *People* v. *Kaiser,* 135 N. Y. Supp. 274, (affirmed in 206 N. Y. 46.)

In the *La Abra Silver Mining case, supra,* Mr. Justice Harlan said that the approval of a bill and the return of a bill are placed by the Constitution on a different basis, and all that that case specifically decided was that the approval of a bill might be had during a recess.

That the return was prevented was the opinion of Mr. Justice Baldwin in *State* v. *Town of South Norwalk,* 56 Atl. 759. The majority opinion disposes of this opinion very summarily, but it merits more consideration. It gives an early picture of the relations between the Legislature and the Governor, showing that in that particular state, at least, the Governor formed part of the Legislature and presided over its sessions. This brings me to another point, namely, that there is nothing in the words of the Constitution or of the Organic Act requiring the Governor to present his objections in writing. He might appear before the house on the last day and state his objections orally, and the particular house would be required to spread his objections on its journal. This procedure, as the Connecticut case indicates, would probably not have astonished any of the early legislators, and the action of President Wilson in appearing personally before Congress and delivering his messages gives color to the theory that the Governor might so present his objections orally.

The case of *In re An Act entitled "An Act Concerning Public Utilities,"* 84 Atl. 706, is squarely in point and by reason and authority justifies the position of the respondent in this case. *People* v. *Hatch,* 33 Ill. 156, for its general reasoning is applicable, although there the Governor is required by the Constitution to return a bill at the next legislative session.

I have attempted to show that Massachusetts and Nebraska, confronted with a somewhat similar situation, met it by saying that the days allowed the Governor for delibera-

tion were legislative and not natural days. In the New Hampshire case the adjournment, apparently, was only over Sunday, but in any event the court decided that an ordinary adjournment from day to day for a recess did not prevent a return. The New York case of *Hequembourg* v. *City of Dunkirk,* 2 N. Y. Supp. 447, 49 Hun, 550, followed New Hampshire, saying that an ordinary recess did not prevent a return.

In the California case of *Hardpending* v. *Haight, supra,* it was only the particular house that was adjourned. The court held that there was no return, and the rationale of the decision was that as the law did not require impossibilities, the Governor was bound to return as best he might. If in that case he had returned the bill at the next open session of the house, the Legislature being in continuous session, the court probably would have held that a sufficient return.

The Louisiana case of *State ex rel. State Pharmaceutical Assn.* v. *Michel,* 49 L. R. A. 218, while it says on page 225 that adjournment, as here used, means final adjournment, there was no question of a temporary recess involved nor really of a final adjournment and I am somewhat at a loss to know why the court felt it necessary to pass upon this point. What the court really decided was that the bill had failed because the Governor had returned it in time, inasmuch as his five natural or calendar days (except Sundays) had not expired, and the court carefully explained how such a computation should be made. It does, however, decide that a return is sufficiently made by depositing the bill with some officer, as was done in the New Hampshire and New York cases before cited. It is because some of these cases seem to indicate that a return may be made to officers that I have specially attempted to show that the words "the house" are not susceptible of such an interpretation.

*Johnson City* v. *Tennessee East. Elec. Co.* 182 S. W. 587, is the case which most nearly sustains the contentions of the petitioner. But, just as the court in that case attempts to dis-

tinguish the Illinois and Connecticut cases by reference to their particular constitutions and practices, so I think the Tennessee case may be distinguished. In point of fact the court there decides that the interpretation to be given to the particular constitutional provision is settled by the constitution of Tennessee itself, inasmuch as the statutory provision permitting a return by the Governor, with his objections in writing, to the committee on enrolled bills would be a good return within the meaning of the constitution.

In view of the language of the Federal Constitution itself and of the authorities I have cited, including the New Jersey case which it does not cite, the Tennessee case cannot be controlling. I have now considered the cases discussed in the majority opinion.

Force is given to the general conclusion that I have reached by the fact that the Governor in vetoing a bill is almost universally considered to be acting as part of the Legislature. See note to *Detroit* v. *Chapman,* 37 L. R. A. 398; Sutherland Stat. Const., sec. 60, p. 101; *Com. ex rel. Elkin* v. *Barnett,* 199 Pa. 166, 55 L. R. A. 882; *Lukens* v. *Nyc,* 105 Pac. 594; *Regents of the University* v. *Trapp,* 113 Pac. 912; *State ex rel. Main* v. *Crounse* (Neb.), 20 L. R. A. 265; *In re Executive Communication* (Fla.), 6 So. 925; *Fulmore* v. *Lane* (Tex.), 140 S. W. 411. There can be no legislative act while the Legislature is not in session.

Congress has specifically said for Porto Rico that the Governor shall have thirty days for the approval of a bill in case an adjournment prevents a return, but the return is to be made exactly as it would be under the Constitution of the United States. In *Lyons* v. *Woods,* 153 U. S. 663, the court held that the constitution of a Territory, in so far as it conforms to the Constitution of the United States, is to be construed as the United States Constitution would be.

Now, barring possibly the Tennessee case, the upshot of the cited opinions, so far as they are reasoned and not mere dicta, is that the courts will not hold to a literal interpretation

of the law when a temporary, momentary or ordinary recess adjournment prevents the return of a bill. The Governor, then, as the California court says, must return the bill as best he may. But it seems to me that these courts have made an exception to the language of the Constitution in order to give effect to what they considered the evident intention of the framers of the Constitution. It is possible, too, that I might not dissent from such an interpretation of an adjournment of a few days or an ordinary adjournment of the Legislature. Effect should be given to every part of a constitution. There is, however, no reason to extend the exception so as to make the exception the rule. I am not now attempting to define clearly what would be an ordinary recess that might not prevent the return. An adjournment for seventy days, as happened in the case before us, does not partake of the nature of an ordinary recess.

The court should attempt to give effect to every provision of the Constitution. Even the literal interpretation that a single day's adjournment would prevent a return does not necessarily defeat a bill. It merely insures an executive consideration for thirty days, which privilege or duty might otherwise be defeated, especially when, as in the present case, the bulk of the work of the session was in the hands of the Governor for consideration. The majority opinion shows that twenty-eight bills were actually returned by the Governor with his objections after the adjournment on November 26. The Session Laws show that sixty-three bills and some resolutions were approved thereafter, and the record shows that eleven bills were not acted upon, including the one specifically before us. In other words, that after the adjournment of the Legislature on November 26 the Governor had in his hands over one hundred bills and resolutions to consider. The period of adjournment was after the expiration of the original ninety days of the session and a long period after the time when new bills could be introduced.

The Organic Act clearly indicates the intention of Congress that the Governor should have thirty days for the consideration of bills at the close of the session, and effect ought to be given to this intention of Congress unless some very good reason appears to the contrary. As a choice of evils, it seems better to me that some bills should fail for lack of time to deliberate than that all bills should be hurriedly considered. By the Constitution of the United States and of most individual states the executive has a voice in the Legislature equal to two-thirds of the actual membership of each house, failing one member of either house. If the courts may lean against a literal interpretation to give effect to the right of a particular house to adjourn for a day or the Legislature for a short recess, a court should also be astute to prevent the executive privilege of deliberation from being defeated. One of the leading ideas of section 34 is that the session should be continuous. It seems to me that with the exception of Tennessee almost any of the courts collated in the brief of the Attorney General, where the cases pro and con were collected, would say that the adjournment taken in this case was rather in the nature of a final adjournment than of the nature of an ordinary recess. The disagreeable consequences of any other interpretation are manifest. It is said, for example, in Watson On The Constitution, vol. 2, p. 991, that the recess of the Senate does not mean the holiday adjournment of the session; and the President is not justified in making a recess appointment during that time. Hence, if this adjournment is to be treated as an ordinary recess and the commentator is correct, the Governor was prevented from making any appointment for a period of seventy days, or from November 26 to February 4. As, if the Legislature may adjourn for seventy days, so it may adjourn for a much longer period, amounting perhaps to nearly a year, such an adjournment would paralyze, during such a protracted adjournment, the appointing power of the Governor. And, similarly, it would probably prevent

the possibility of an extraordinary session. If the adjournment in this case, while not being a final adjournment, is in the nature of a final adjournment, the Organic Act making no distinction between adjournment and recess, then it seems probable that, during a long adjournment for seventy days or more, the Governor could both make appointments and call an extraordinary session of the Legislature.

Some point is made in the majority opinion on the fact that the Governor returned twenty-eight bills with his veto. The inference would be that this was an executive interpretation, but if there is any executive interpretation in this case, it consists in the act of the Executive Secretary in refusing to promulgate the law in question. He is entirely subject to the order of the Governor. Likewise, the Attorney General, as part of the executive branch of the Government, is here resisting the issuance of the mandamus. The action of the Governor here, as in the case of the advice of Attorney General Miller to President Harrison, is one that might readily be taken out of excess of caution. The Governor might think very strongly, as did Attorney General Miller, that bills not returned during the seventy days did not become laws; but he might, nevertheless, also select the laws which to him were subject to the most objections and return them vetoed to the Legislature in the manner indicated by section 39 of the Political Code. He might be dubious of the interpretation that might be put upon it by the courts, and such a doubt has thus far been justified by the action of this court in the present case. It would, in any event, be commendable on the part of the Governor to state his objections in the interest of future legislation. No single series of acts covering a short period should be considered an executive interpretation.

The majority opinion also lays stress on the operation of section 39 of the Political Code, as follows:

"If, on the day the Governor desires to return a bill without his approval, and with his objections thereto, to the house in which it

originated, that house has adjourned for the day (but not for the session), he may deliver the bill with his message to the presiding officer, secretary or clerk, and if neither can be found upon reasonable search, then to any member of such house, and such delivery is as effectual as though returned in open session, if the Governor, on the first day the house is again in session by message notifies it of such delivery, and of the time when and the person to whom, such delivery was made.''

The principal answer to this contention is that section 39 would be utterly ineffective to change the interpretation to be given to the words of the Organic Act as to what constitutes or prevents a return. If the return would be prevented by the Legislature's adjournment under the Constitution, the Legislature could not make a different return possible, as was pointed out in *People* v. *Hatch,* 33 Ill. 154 *et seq.,* and in *State* v. *Joseph,* 57 So. 944. There are three things under the Organic Act which the Governor may do after a bill is presented to him: he may approve it, he may return it with his objections, or he may take no action. Section 39, by its terms, relates only to the case when the Governor wishes to return a bill with his objections; it has no application to the case in which he chooses to take no action for lack of time or otherwise. The Organic Act clearly provides that if after the expiration of thirty days he should not approve, the bill does not become a law, thus showing that Congress was persistent in saying that a bill should fail if the Governor did not approve it. Section 39, moreover, was adopted before the passage of the Organic Act. The prior Organic Act contained no provision with respect to this privilege of thirty days. It is evident, too, from a reading of section 39 that it relates to an adjournment of the house for the day and not to an adjournment of the Legislature for a long period.

As, after presentation to the Governor, a bill should be returned to an open session of the particular house and as there was no such house in session at the end of the ten days

(Sundays excepted), nor within the period of an ordinary recess, I maintain that the return of the bill in question was prevented and that the mandamus ought to have been denied.